UNITED STATES ex rel. Ray, U. S. Atty., v. HIBNER et al.

District Court, D. Idaho, E. D. August 6, 1928.

No. 478.

1. Indians ⬳15(1)—Principle that grants by Indians should be regarded strictissimi juris must be liberally applied, in considering treaties with and statutes affecting them.

In considering treaties with Indians and acts of Congress relating to their rights, principle that grants by them should be regarded strictissimi juris, and all uncertainties resolved in their favor, must be liberally applied.

2. Waters and water courses ⬳151—Indians' reserved water rights held not abandoned or forfeited by failure to reside on land and use water (Ft. Bridger Treaty July 3, 1868, arts. 6, 11 [15 Stat. 673]; Treaty Feb. 5, 1898, art. 8 [31 Stat. 672]).

Failure of Indians to reside on their lands and use water granted them for irrigation and domestic purposes by Ft. Bridger Treaty July 3, 1868, arts. 6, 11 (15 Stat. 673), and reserved by Treaty Feb. 5, 1898, art. 8 (31 Stat. 672), will not cause abandonment or forfeiture of their rights to use one miner's inch of water per acre for entire year, though next appropriator

may use water not diverted and applied to beneficial use by Indians.

3. Waters and water courses ⬦⟹155—Purchasers of Indians' lands acquire same water rights for acreage irrigated when title passed, and added with reasonable diligence thereafter, subject to general laws (Ft. Bridger Treaty July 3, 1868, arts. 6, 11 [15 Stat. 673]; Treaty Feb. 5, 1898, art. 8 [31 Stat. 672]).

Purchasers of lands from Indians, to whom water rights were granted and reserved by Ft. Bridger Treaty July 3, 1868, arts. 6, 11 (15 Stat. 673), and Treaty Feb. 5, 1898, art. 8 (31 Stat. 672), acquire same character of water rights, with equal priority for actual acreage under irrigation, when title passed, and any increased acreage placed under irrigation by them with reasonable diligence, subject to general rules of law governing appropriation and use of public waters of state.

4. Judgment ⬦⟹828(3)—Defendants, awarded water by state court decree, will be decreed such rights in federal court suit to determine Indians' rights under res judicata principle (Ft. Bridger Treaty July 3, 1868, arts. 6, 11 [15 Stat. 673]; Treaty Feb. 5, 1898, arts. 3, 8 [31 Stat. 673]).

Under principle of res judicata, defendants, whose lands are awarded water by state court decree, becoming final after decree in action by United States to determine Indians' rights under Ft. Bridger Treaty July 3, 1868, arts. 6, 11 (15 Stat. 673), and Treaty Feb. 5, 1898, arts. 3, 8 (31 Stat. 672), will be decreed such water rights, while those not parties to state court case will be decreed such rights as evidence in federal case discloses.

At Law. Action by the United States, on the relation of H. E. Ray, United States Attorney for the District of Idaho, against Julia Hibner and others. Preparation of a decree determining the water rights of defendants and Indian wards of the government and their heirs directed.

H. E. Ray, U. S. Dist. Atty., of Boise, Idaho, for plaintiff.

R. W. Jones, of Pocatello, Idaho, George H. Smith, of Salt Lake City, Utah, H. B. Thompson, J. H. McEvers, Merrill & Merrill, H. J. Swanson, Holden & Coffin, and Isaac McDougall, all of Pocatello, Idaho, H. C. McDougall, of Boise, Idaho, and Jones, Pomeroy & Jones, of Pocatello, Idaho, for defendants.

CAVANAH, District Judge. The United States invokes the jurisdiction of this court to hear and determine the rights of Indian wards (and their heirs) of the government to the use of the waters of Toponce creek, in Bannock county, Idaho, for irrigation and domestic purposes, upon the ground that such rights were granted to the Indians under the treaty made between it and them, known as the "Ft. Bridger Treaty," of February 16, 1869 (15 Stat. 673).

The complaint sets forth 22 allotments of land granted by the government to the Indians, which were formerly included in the Ft. Hall Indian reservation, and thereby seeks a decree granting to the Indians the right to divert one miner's inch of water per acre from the creek, with a priority of February 16, 1869, the date of the treaty referred to. The lands included in these allotments, and also those embraced in the area claimed by the defendants, are arid in character and require artificial application of water by means of irrigation to produce crops thereon. Toponce creek is the only available supply of water by which the allotments can be irrigated. In 1921 an action was brought in the state district court for the purpose of adjudicating the right to use of the waters of Portneuf river and is tributaries, and in the decree there entered the waters of Toponce creek, a tributary of Portneuf river, was decreed to those who were parties thereto. Neither were the United States nor any of its Indian wards made parties to that suit, and their rights were not therein determined. When the issues in the present case were being formed, this court held that the decree of the state district court, which was then asserted to be a final one, was res adjudicata as to the parties in that suit, and thereafter the parties here stipulated that, as there is some probability of an appeal being taken from that decree to the Supreme Court of the state, the final decree there shall be binding upon the parties here who were parties in that case, excepting as to those who may have purchased allotments from the Indians. So the issues here are narrowed to the question of determining the priority and amount of water to which the Indian lands are entitled and those parties who have succeeded to the Indian allotments.

### Rights of Indian Lands.

The contention of the government, as guardian for the Indian wards of the land allotted to them, is that, under the treaties and acts relating to the reservation, its wards have a superior right to the stream, which does not depend upon occupancy or possession of their lands, and which the defendants could not defeat or impair by first appropriating the water and actually applying it to their beneficial use, and that the Indian lands are entitled to a continuous flow through the entire year of a sufficient amount of water from Toponce creek for domestic and irrigation purposes for such portion of

their lands as are susceptible to irrigation, regardless of whether or not they have placed under cultivation and actually irrigated all of such lands. While, upon the other hand, those defendants who are not successors to the Indian lands contend that the Indians are only entitled to such amount of water as has actually been applied to a beneficial use and of priority of date of such application. In other words, the rule of law relating to appropriations of water made by the white man should apply equally to· Indian lands. The disposal of this interesting question requires the inquiry as to what are the rights to the use of water for Indian lands allotted under the treaties and acts of Congress relating to the reservation.

[1] Going back to the time when Idaho was a territory, and when the treaty of 1869 was entered into, we find that the government had the power to reserve the waters flowing through the territories and exempt them from appropriation under the state laws. U. S. v. Rio Grande Ditch & Irrigation Co., 174 U. S. 690, 19 S. Ct. 770, 43 L. Ed. 1136; U. S. v. Winans, 198 U. S. 371, 25 S. Ct. 662, 49 L. Ed. 1089. That power to reserve the waters of these Indians was exercised by the government in these treaties, and was to be continued through years by them by means of their old habits. Winters v. United States, 207 U. S. 564, 28 S. Ct. 207, 52 L. Ed. 340. When considering treaties with Indians and acts of Congress relating to their rights, we are confronted with the liberal application of the wholesome principle that grants by them should ·be regarded strictissimi juris, and all uncertainties be resolved in their favor. The provisions of the treaties which appear to be of controlling importance are to be found in articles VI and XI of the Ft. Bridger Treaty (July 3, 1868, ratified February 16, 1869. 15 Stat. 673), and articles III and VIII of the Treaty of February 5, 1898 (31 Stat. 672). Articles III and VIII of the Treaty of 1898 provide:

Article III: "Where any Indians have taken lands and made homes on the reservation and are now occupying and cultivating the same, under the sixth section of the Ft. Bridger Treaty hereinbefore referred to, they shall not be removed therefrom ·without their consent, and they may receive allotments on the land they now occupy; but in case they prefer to remove they may select land elsewhere on that portion of said reservation not hereby ceded, granted, and relinquished and not occupied by any other Indians."

Article VIII: "The water from streams on that portion of the reservation now sold which is necessary for irrigating on land actually cultivated and in use shall be reserved for the Indians now using the same, so long as said Indians remain where they now live."

[2] The Indians .whose rights are asserted by the government in the present suit have elected to retain as their allotments the lands in question, which are within the tract ceded to the United States, and in the reservation, and are adapted to the raising of hay and grain thereon. Water from Toponce creek has and is now being used upon a portion of their lands in the production of wild hay. The defendants who are contesting the rights of the Indians urge that even such rights as may have been reserved to these allottees under article VIII have been lost through their failure since that date to reside on their lands, and further they say that, even if that be not true, by the express terms of the treaty the exception to the grant is limited to such amount of water as is necessary for irrigating the lands actually cultivated and in use. This extreme view is thought to be untenable, as the effect of the treaties was to recognize and fix permanently the rights that the Indians had at the.time the treaties were made, which was to a continuous use of a sufficient amount of water for the irrigation of their lands, and domestic purposes.

When considering the nature of the grant under consideration, we must not forget that it was not a grant to the Indians, but was one from them to the United States,·and all rights not specifically granted were reserved to them. Winters v. U. S., and U. S. v. Winans, supra. It contains no provision that any of their rights should be lost in the event the allottee should absent himself from the land. In the well-considered case of Skeem v. U. S., 273 F. 93,·which was a case analogous to the present one, the Circuit Court of Appeals of the Ninth Circuit had before it the provisions of these treaties, and there upheld the doctrine which the government here is urging in behalf of its Indian wards, and the conclusion must therefore follow that these Indian lands should be awarded a continuous right through the entire year to the use of one miner's inch of water per acre for the irrigation of that portion of their lands which the evidence discloses is susceptible to irrigation, and with a priority of February 16, 1869. It will be borne in mind that the conclusions here reached, granting to the Indian lands the right to the use of one inch of water to the acre during the entire year will not prohibit the next appropriator on the stream from using the water, when it is not diverted and used from the stream by the In-

dians and applied by them to a beneficial use, but the failure of the Indians to use their water will not cause either an abandonment or a forfeiture of their rights thereto.

### Rights of Those Who are Successors of Indian Lands.

[3] This question is not free of difficulty, for it presents for consideration what is the status of the water rights of those who have acquired by purchase their lands from the Indians whose rights were reserved unto them, and who became vested with all the rights incident to ownership of both the lands and water under the treaties, with a priority of February 16, 1869. The right of the Indians to occupy, use, and sell both their lands and water is now recognized, as this view is sustained in the case of Skeem v. U. S., supra, and, such being the case, a purchaser of such land and water right acquires, as under other sales, the title and rights held by the Indians, and that there should be awarded to such purchaser the same character of water right with equal priority as those of the Indians. The status of the water right after it has passed to others by the Indians seems to be somewhat different from while such right is retained by the Indians, because the principle invoked by the courts for the protection of the Indian as long as he retains title to his lands does not prevail and apply to the white man, and the reason for so holding is that there was reserved unto the Indians the absolute right to own and use in their own way the water for their lands, while the white man, as soon as he becomes the owner of the Indian lands, is subject to those general rules of law governing the appropriation and use of the public waters of the state, and would, as grantee of the Indian allotments, be entitled to a water right for the actual acreage that was under irrigation at the time title passed from the Indians, and such increased acreage as he might with reasonable diligence place under irrigation, which would give to him, under the doctrine of relation, the same priority as owned by the Indians; otherwise, the application of any other rule would permit such grantee for an indefinite period to reclaim the balance of his land and withhold the application of the water to a beneficial use, which is against the policy recognized in the development of arid lands.

### Rights of Those Defendants Whose Lands are Included in the Final State Decree.

[4] When the decree of the state court becomes final in the case of Union Grain & Elevator Co. v. McCammon Ditch Co. (see 41 Idaho, 216, 240 P. 443), those defendants in the present case whose lands have been awarded water in the state decree will, in accordance with the stipulation of the parties and under the principle of res adjudicata, be decreed such water rights as are decreed to them in the state decree, and as to those defendants here, who were not parties in the case in the state court, will be decreed such a water right as the evidence in the record here discloses, which will be included in the form of decree to be submitted.

### Duty of Water.

In considering the record upon the question as to what should be the duty of water to be adopted and applied to these lands, there does not seem to be much controversy about that, as the evidence justifies the conclusion that one miner's inch of water per acre, to be measured at the point of diversion from the stream, is a reasonable duty.

Counsel for the plaintiff, and Messrs. A. L. Merrill, Isaac McDougall, and L. E. Glennon, representing certain defendants, will prepare appropriate decree, with the usual provisions found in such decrees, and with definite declarations of the amount of water, right of each claimant, the date of priority, the point of diversion, and place of use. The several parties to pay their own costs.