MOODY, Project Manager, v. JOHNSTON et al., and four other cases.

No. 6785.

Circuit Court of Appeals, Ninth Circuit.

July 27, 1933.

As Amended on Denial of Rehearing Sept. 6, 1933.

Wellington D. Rankin, U. S. Atty., and Sam D. Goza, Jr., Asst. U. S. Atty., both of Helena, Mont., Charles B. Rugg, Asst. Atty. Gen., Ethelbert Ward, Sp. Asst. to Atty. Gen., and Benj. P. Harwood, Dist. Counsel, U. S. Indian Irrigation Service, of Billings, Mont., for appellant.

Elmer E. Hershey, of Missoula, Mont., for appellees, except Scheer.

Before WILBUR, Circuit Judge, and JAMES and NORCROSS, District Judges.

NORCROSS, District Judge.

This is an appeal from decrees entered by the court below (Scheer v. Moody, 48 F.(2d) 327) in five suits consolidated for trial and appeal, enjoining defendant, appellant herein, individually and as Project Manager of the Irrigation Project within the Flathead Indian Reservation in Montana, from assessing or causing any assessment against appellees for the construction, operation, or maintenance of said project and from asserting or claiming that appellees have no water right from Finley creek, a natural stream arising within said reservation, and from any and every way clouding the right, title, and interest respecting the waters of said stream as determined by said decree to be in appellees. The decrees also contain a provision reading: "Plaintiffs are entitled to the full extent of their necessities to sufficient water to irrigate their said lands, which in no event will exceed one inch per acre of the waters of Finley Creek."

It is appellant's contention that the suits cannot be maintained without making the United States and the Secretary of the Interior parties defendant, and should have have been dismissed upon appellant's motion for the reason they seek to adjudicate property rights of the United States; that appellees are not entitled to water rights as alleged or found by the court below, and are liable for charges for construction, operation, and maintenance for the Irrigation Project. Appellant, officially designated Project Engineer, is manager of said Irrigation Project under authority of the Commissioner of Indian Affairs and the Secretary of the Interior.

Appellees are white owners of former Indian allotments within the limits of the project upon which trust and fee patents were issued, and claim exemption from construction, operation, and maintenance charges for the reason that water rights were appurtenant to their lands prior to the initiation of such project, and hence that appellant is without authority to interfere with their private property.

The assignment of error in each case in respect to the overruling of defendants' motions to dismiss for want of necessary parties presents serious questions.

The motions to dismiss in the several cases interposed by defendant, appellant herein, as Project Manager, were, among others, upon the following grounds: "That there is a defect of parties defendant in said action in that it appears from the bill of complaint therein that said C. J. Moody as Project Manager of said Flathead Reclamation Project is an employee of the United States, and is interested and can be interested in said cause of action only in his capacity as such employee of the United States of America in charge of said Reclamation Project as Project Manager; that the property rights of the United States of America are involved in this action; and that the United States of America is a necessary party defendant to the said action, but is not joined or sued as defendant therein."

The motions to dismiss interposed by defendant as an individual read: "Comes now the defendnant C. J. Moody in his individual capacity and moves the Court to dismiss the above entitled action as to said defendant as a private individual upon the ground and for the reason that the bill of complaint herein fails to state facts sufficient to constitute a cause of action against said C. J. Moody as a private individual, in that it affirmatively appears upon the face thereof that all acts complained of on the part of C. J. Moody were acts performed by him in his capacity as Project Manager of Flathead Reclamation Project, under the direction and authority of the Secretary of the Interior of the United States of America, and not in his capacity as a private individual or otherwise than as such Project Manager."

In the several complaints there appears the following allegation:

"That the defendant, C. J. Moody, is now, and for more than ten years last past has been, the engineer and project manager, for the United States of America under the Department of the Interior, of the Flathead Irrigation Project upon the Flathead Indian Reservation in Missoula County, Montana.

"That as such engineer and project manager the said defendant has charge of, under the Secretary of the Interior of the United States, the construction, operation, management and control of the Flathead Irrigation Project, and as a part of his duties collects cost of construction, operation and maintenance of ditches built, and distributes under said Reclamation Project the waters of Finley Creek, which is an unnavigable, natural stream of flowing water located in Missoula County, Montana."

In the answers to the complaints of the several plaintiffs appears the following allegation: "Defendant, however, admits and avers that as a duly authorized employee and as said manager in behalf of the United States Government, under the direction and authority of the Secretary of the Interior, pursuant to the laws and statutes of the United States, he assessed against said lands claimed by plaintiffs the said charges for construction, operation and maintenance of said irrigation system for the years 1927 and 1928; and further alleges that said charges, and each thereof, were and are lawful and proper."

That these suits may be prosecuted against the Project Manager without joining the United States or the Secretary of the Interior, respondents rely on the cases of Magruder v. Belle Fourche Valley Water Users' Association (C. C. A. 8) 219 F. 72, and Baker v. Swigart (D. C.) 196 F. 569, 571, affirmed in Swigart v. Baker, 229 U. S. 187, 33 S. Ct. 645, 57 L. Ed. 1143. Both in the Magruder and Baker Cases the suit was against a subordinate officer of the Department of the Interior in immediate charge of the particular reclamation project. The cases presented questions of a similar character to those de-

termined by the court below in the case at bar. The right to proceed against such officers without joining the Secretary of the Interior does not appear to have been raised in either the Magruder or Baker Case, and that question was not considered in the opinion rendered.

Appellant relies on decisions of the Supreme Court of the United States rendered subsequent to the decisions in the Magruder and Baker Cases, citing Webster v. Fall, 266 U. S. 507, 45 S. Ct. 148, 149, 69 L. Ed. 411, and Gnerich v. Rutter, 265 U. S. 388, 44 S. Ct. 532, 533, 68 L. Ed. 1068, and upon the decision in Warner Valley Stock Co. v. Smith, 165 U. S. 28, 34, 17 S. Ct. 225, 41 L. Ed. 621, rendered prior thereto, as determining the question that a suit may not be maintained against a subordinate officer without joining the superior officer under whose authority and direction he is acting.

The case of Gnerich v. Rutter, supra, on appeal from this circuit, was a case in which the Prohibition Director for the District of California was made sole defendant. This court affirmed the decree of the District Court dismissing the bill as not stating a cause of action, basing such affirmance upon the ground that the suit could not be maintained without making the Commissioner of Internal Revenue a party defendant. Gnerich v. Yellowley, 277 F. 632. Commenting upon the decree of this court affirming the judgment of dismissal, the Supreme Court said: "We agree with the Circuit Court of Appeals that the Commissioner of Internal Revenue was a party without whose presence the suit could not be maintained; but the decree of the District Court should not have been affirmed. The decree was on the merits, and, as it was given in the absence of a necessary party, it should not have been permitted to stand."

From the opinion in Webster v. Fall, supra, we quote:

"There has been no service upon the Secretary, and he has not appeared in the suit. The other defendants were served, the case went to trial, and the bill, after a hearing, was dismissed for want of equity and on the merits. But the suit was one which required the presence of the Secretary, and the bill should have been dismissed for want of a necessary party. Gnerich v. Rutter, 265 U. S. 388, 44 S. Ct. 532, 68 L. Ed. 1068; Warner Valley Stock Co. v. Smith, 165 U. S. 28, 34, 17 S. Ct. 225, 41 L. Ed. 621. * * * In the Smith Case, suit was brought against the Secretary of the Interior and the Commissioner of the General Land Office to enjoin them from exercising further jurisdiction with respect to the disposition of certain public lands, from further trespassing upon complainant's right of quiet possession, and to command the issue of patents to plaintiff. The suit abated as to the Secretary because of his resignation, and it was held that it could not be continued against the Commissioner alone. We quote from the opinion (pages 34, 35 [of 165 U. S. (17 S. Ct. 225, 228)]) : 'The purpose of the bill was to control the action of the Secretary of the Interior; the principal relief sought was against him, and the relief asked against the Commissioner of the General Land Office was only incidental, and by way of restraining him from executing the orders of his official head. To maintain such a bill against the subordinate officer alone, without joining his superior, whose acts are alleged to have been unlawful, would be contrary to settled rules of equity pleading.'

"Counsel for appellant directs our attention to other cases, where this court proceeded to determine the merits notwithstanding the suits were brought against inferior or subordinate officials without joining the superior. We do not stop to inquire whether all or any of them can be differentiated from the case now under consideration, since in none of them was the point here at issue suggested or decided. The most that can be said is that the point was in the cases if any one had seen fit to raise it. Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents."

What was known as the Flathead Indian Reservation was established in pursuance of a treaty entered into on July 16, 1855, with certain Indians as a confederated tribe to be known as the Flathead Nation, which treaty was ratified by the Senate March 8, 1859 (12 Stat. 975). By Act of Congress, approved April 23, 1904 (33 Stat. 302), provision was made for the survey of said reservation and the allotment of a portion of the lands embraced therein to the Indian occupants. The remainder of the land within the reservation was to be classified and appraised by a commission appointed for such purpose, and upon the approval of the Secretary of the Interior was to be "disposed of under the general provisions of the homestead, mineral, and town-site laws of the United States." Section 8. By Act of Congress, approved April 30, 1908 (35 Stat. 70, 83), provision was made "for preliminary surveys, plans, and estimates of irrigating systems to irri-

gate the allotted lands of the Indians of the Flathead Reservation * * * and the unallotted irrigable lands to be disposed of under the Act of April 23, 1904, * * * and to begin the construction of the same. * * *"

With the approval of the Secretary of the Interior, a committee, consisting of the Indian superintendent, an engineer employed on the works, and an Indian selected by the Indians, was appointed to determine "concerning water rights and ditch rights by reason of ditches constructed at the expense of the allottees before the beginning of construction of the present Flathead Irrigation Project." The report of the committee was submitted to the Secretary of the Interior April 26, 1915. This report covered, among other allotments, those involved in this suit, now owned by appellees. The report contained the following: "Statement is made in each instance of the exact acreage irrigated in each allotment and no other right from any source is appurtenant to the allotment." It is the contention of appellees that this report was approved or accepted by the Secretary of the Interior, and that it showed that the several allotments in question in this suit had been irrigated from a ditch from Finley creek constructed in 1893.

An Act of Congress of May 18, 1916 (39 Stat. 123, 138, § 11), contained the following provisions: "That the payments for the proportionate cost of the construction of said systems required of settlers on the surplus unallotted land" (by the Act of May 29, 1908, 35 Stat. 448, § 15) "shall be made as herein provided," and "Provided further, That nothing contained in the Act of" (May 29, 1908, 35 Stat. 444) "shall be construed to exempt the purchaser of any Indian allotment purchased prior to the expiration of the trust period thereon from any charge for construction of the irrigation system incurred up to the time of such purchase, except such charges as shall have accrued and become due in accordance with the public notices herein provided for, or to relieve the owners of any or all land allotted to Indians in severalty from payment of the charges herein required to be made against said land on account of construction of the irrigation systems; and in carrying out the provisions of said section the exemption therein authorized from charges incurred against allotments purchased prior to the expiration of the trust period thereon shall be the amount of the charges or installments thereof due under public notice herein provided for up to the time of such purchase. * * *"

The act further provides:

"That the Secretary of the Interior be, and he is hereby, authorized and directed to announce, at such time as in his opinion seems proper, the charge for construction of irrigation systems on the Blackfeet, Flathead, and Fort Peck Indian Reservations in Montana, which shall be made against each acre of land irrigable by the systems on each of said reservations. Such charges shall be assessed against the land irrigable by the systems on each said reservation in the proportion of the total construction cost which each acre of such land bears to the whole area of irrigable land thereunder. * * *

"That in addition to the construction charges every allottee, entryman, purchaser, or owner shall pay to the superintendent of the reservation a maintenance and operation charge based upon the total cost of maintenance and operation of the systems on the several reservations, and the Secretary of the Interior is hereby authorized to fix such maintenance and operation charge upon such basis as shall be equitable to the owners of the irrigable land. Such charges when collected shall be available for expenditure in the maintenance and operation of the systems on the reservation where collected. * * *

"That the Secretary of the Interior * * * is hereby authorized and directed to determine the area of land on each reservation which may be irrigated from constructed ditches and to determine what allowance, if any, shall be made for ditches constructed by individuals for the diversion and distribution of a partial or total water supply for allotted or surplus unallotted land. * * *"

The authority for the charges levied against appellees for construction, operation, and maintenance of said Flathead Reclamation Project is based on the provisions of said Act of Congress of May 18, 1916, and the Act of May 29, 1908 (35 Stat. 444, 448, 450, § 15), which contained the following provision: "All applicants for water rights under the systems constructed in pursuance of this Act shall be required to pay such annual charges for operation and maintenance as shall be fixed by the Secretary of the Interior. * * * All lands allotted to Indians shall bear their pro rata share of the cost of the operation and maintenance of the system under which they lie."

■■ It is clear that the charges, the enforcement of which is sought to be enjoined in this suit, are, and only may be, authorized and directed by the Secretary of the Interior. It is also clear, therefore, that the validity of

those charges, under the rule enunciated in the Webster, Gnerich, and Warner Valley Stock Company Cases, cited supra, may only be attacked in a suit in which the Secretary of the Interior is a party defendant. It follows that the decrees must be reversed, with directions to dismiss.

The court is not unmindful that in these and other suits submitted at the same time questions of great importance not only to the appellees but to others interested in the project are involved. But for the absence of at least one necessary party these questions might be determined upon the record as made. If no greater amount of water is claimed for the allotments in question upon this appeal than as stated in the report of the committee made to the Secretary of the Interior respecting diversions and applications of water for irrigation purposes prior to the initiation of the Flathead Reclamation Project, and such amount of water is recognized as properly apportioned to said lands in the administration of said project, then the Secretary of the Interior would be the only additional necessary party to actions for the determination of questions whether such lands were liable to construction, maintenance, and operation charges imposed on account of the project. Where there has been no recognized determination of the amount or duty of water, even though some indefinite amount may have been diverted and applied to certain allotments or tracts of land prior to the construction of the project works, a determination of the amount of water to which the land may be entitled as well as liability for construction, maintenance, and operation charges may not be determined without not only the Secretary of the Interior being made a party defendant, but the United States or others who may be affected by any change in the use of water available for irrigation.

It would seem from the array of counsel appearing for appellant in these cases that they were tried with the same care that they would have been had the Secretary of the Interior or the United States, or both, been made parties. If this be so, possibly the time and expense of making another entire record may be avoided.

The decree is reversed, and case remanded to the District Court, with directions to dismiss the same for want of necessary party or parties, unless the plaintiffs within a reasonable time amend their complaint to bring in such necessary party or parties, and to take further proceedings not inconsistent with the views expressed in the opinion of this court.