## AMERICAN FALLS RESERVOIR DIST. NO. 2 v. CRANDALL et al.

### No. 7906.

Circuit Court of Appeals, Ninth Circuit.

March 30, 1936.

W. G. Bissell and Branch Bird, both of Gooding, Idaho, for appellant.

J. R. Bothwell, Harry Povey, R. P. Parry, and J. Paul Thoman, all of Twin Falls, Idaho, and Otto E. McCutcheon and Chase A. Clark, both of Idaho Falls, Idaho, for appellees Crandall et al.

J. A. Carver, U. S. Atty., and E. H. Casterlin and Frank Griffin, Asst. U. S. Attys., all of Boise, Idaho, and B. E. Stoutemyer, Dist. Counsel, Bureau of Reclamation of Portland, Or., for appellee Harold Ickes.

Before WILBUR, DENMAN, and HANEY, Circuit Judges.

HANEY, Circuit Judge.

The trial court entered a decree dismissing appellant's complaint, and this appeal is prosecuted from that decree.

On March 30, 1921, the United States, acting through its reclamation service, filed an application with the Department of Reclamation of the state of Idaho to appropriate 8,000 second feet of theretofore unappropriated water of the Snake river, pursuant to the provisions of Idaho Code Ann. § 41-202. This application was approved by the Commissioner of such Department of Reclamation as permit No. 15134, hereinafter, for convenience, referred to as the diversion permit. A portion of the application and permit is as follows:

"2. Quantity of water claimed: 8000 second-feet for new lands. * * *

"5. Water is to be used for: Domestic, irrigation and power purposes. * * *

"7. Estimated cost of work: $ Estimated cost of American Falls Reservoir $15,000,000. Estimated cost of other works of Minidoka North Side Pumping Unit $9,000,000.

"8. Kind of works: Reservoir, diversion dams, pumping stations, canals, distribution systems, etc. * * *

"15. (a) Is reservoir to be used? yes. If so, fill in (b) and (c) below.

"(b) Name of reservoir and number of storage Permit: American Falls Reservoir No. 269.

"(c) Date of filing of application for storage Permit being filed simultaneously with this application. * * *

"Under this permit it is proposed to furnish all the lands now irrigated from Snake River above Milner Dam and from the South Fork of Snake River below the mouth of the lower canyon and some of the lands now being irrigated from Wood River with sufficient storage to provide them with a good and sufficient water right. * * *"

Simultaneously with the filing of the above permit, the United States, acting through its reclamation service, filed another application with the same department to store 3,000,000-acre feet of water per annum from the Snake river. This application was also approved as permit No. R-269, hereinafter, for convenience, referred to as the storage permit. In this application and permit, we find the following:

"2. Quantity of water to be stored Three Million (3,000,000) acre feet per annum. * * *

"4. Water is to be used for: Domestic, irrigation and power purposes. * * *

"7. (b) The available capacity of the reservoir is Three Million (3,000,000) acre feet. * * *

"13. The water stored in accordance with this permit will be conducted to the place of use through the Riley canal, and other systems, constructed under the terms of Permit No. 15134, filed by United States, on Mch. 30, 1921."

The approval of this permit by the Commissioner of Reclamation contained the following:

"Beneficial use of water stored in accordance herewith, to be made on or before April 23, 1936, as set out in Permit No. 15134 for the appropriation of the public waters of the State of Idaho, which is hereby referred to and made a part hereof."

On April 7, 1923, the Commissioner entered an order, which after referring to both of the above described permits, provided "that the time within which proof of completion of works under the said permits must be made and filed in the office of

the Department of Reclamation, be and the same is hereby extended to April 23, 1931."

The Commissioner also entered an order dated July 10, 1926, providing that "the time set for proofs of completion of works under Permits R-269 and 15237 [15134?] is hereby extended to May 18, 1931, and July 29, 1931, respectively, and such extension of time for completion of works under these permits shall automatically extend the time for completion of one-fifth of the work required to be done in one-half of the time, and for making proof of application of water to beneficial use."

On July 27, 1928, the United States filed an application for amendment of the diversion permit, which was approved "only insofar as the rights of others will not be adversely affected thereby." The amendment merely added 46,419 acres of land to the acreage to be irrigated under the original permit.

On September 21, 1927, the United States "acting in this behalf by John H. Edwards the Acting Secretary of the Interior," entered into a contract with appellant, which is an irrigation district organized under the laws of Idaho, wherein, among other things, it is provided:

"Whereas, the District includes (a) approximately eighty-one (81,000) irrigable acres of land which have a partial water supply from Little and Big Wood Rivers, but which need a supplemental water supply, which lands are hereinafter referred to as the 'old lands' of the District, of which approximately forty thousand (40,-000) acres can be served directly by gravity with Snake River water; and (b) approximately Thirty-six Thousand (36,000) irrigable acres of dry lands, the major portion of which are public lands of the United States and which have no source of water supply except out of the water supply to be provided under the terms of this contract, hereinafter referred to as the 'new lands' of the District;

"3. And, Whereas, the United States has constructed that certain reservoir on Snake River known as the American Falls Reservoir having an estimated storage capacity of approximately One million seven hundred thousand (1,700,000) acre-feet. * * *

"The United States out of its share of said American Falls Reservoir will furnish the District the use and benefit of a proportionate part thereof, to wit, a four-seventeenths (4/17) part or share of said reservoir, estimated to be equivalent to four hundred thousand (400,000) acre-feet of storage capacity, and will deliver to the District each year from said reservoir the same proportionate part of the stored water actually available therefrom subject to the same operation and maintenance charges and the same charges for the expense of the protection and distribution of the stored water and subject to the same hold-over rights and other conditions (except as herein otherwise provided) applicable to the other districts and companies which have rights in said reservoir under their respective contracts, a copy of one of which * * * is hereto attached, marked 'Exhibit A' and made a part hereof. The said stored water will be delivered by the United States to the District at the down-stream outlets of the reservoir, immediately below the various power plants at American Falls."

By this contract the government agreed to build the necessary canal, diversion works, and system to make available for use by appellant water from the Snake river. Appellant agreed to pay the government the cost of construction of the canal and distribution and drainage system, and the cost of the storage rights in the American Falls Reservoir, within forty years from the date of a notice to be issued by the Secretary stating that the water was ready for delivery. The United States had certain powers to withhold benefits in event of nonpayment, as specified in the contract.

On June 25, 1929, in a suit wherein an adjudication of water rights of a number of parties was sought, a decree, which will be referred to as the Woodville decree, was entered adjudicating the rights of the parties. A stipulation was embodied in the decree. The Secretary of the Interior was a party to the suit, and to the stipulation. In the stipulation it was provided:

"It is further stipulated and agreed that there shall be decreed in the above entitled cause of action, to the Secretary of the Interior of the United States, and his successors in office, for use upon the various projects which have heretofore or may hereafter become entitled to the same by reason of contracts with the United States therefor, the water filed upon by the United States in Connection with the

construction of the American Falls Reservoir under permit number 15134, and reservoir permit number R-269, under date of priority of March 30, 1921, the amount of water to be decreed to the Secretary of the Interior of the United States and his successor in office for such use under said date of priority of March 30th, 1921, to be One Million Seven Hundred Thousand (1,700,000) acre feet per annum for storage in the American Falls Reservoir and Eight Thousand (8,000) second feet for direct diversion.

"It is stipulated and agreed that the rights of contract holders and any others beneficially interested, now or hereafter claiming or having storage reservoir rights in American Falls Reservoir shall not be affected or determined by the decree to be entered in this action, as to the use to be made of the waters decreed, under such decree, to the Secretary of the Interior under Permits described in Paragraph No. 4, of this stipulation, the same being Permits No. 15134 and R-269."

The decree also provided:

"All of the rights hereby awarded and decreed are made subject to the terms of the stipulation incorporated herein and made a part hereof.

"To the Secretary of the Interior of the United States of America, and his successor in office, for use upon the various projects which have heretofore or may hereafter become entitled to the same by reason of contracts with the United States therefor, the water filed upon by the United States in connection with the construction of the American Falls Reservoir under permit number 15134, and reservoir permit number R-269, under date of priority of March 30th, 1921, the amount of water to be decreed to the Secretary of the Interior of the United States and his successors in office for such use under said date of priority of March 30th, 1921, to be One Million Seven Hundred Thousand (1,700,000) acre feet per annum for storage in the American Falls Reservoir and Eight Thousand (8,000) second feet for direct diversion."

On May 16, 1931, the United States filed proof of completion of works under the diversion permit, and another proof of completion of work under the storage permit, and on July 12, 1932, two certificates of completion of works under the two permits were issued by the Commissioner.

The works were practically completed in the year 1930, and the evidence shows that during that year 3,000-acre feet of water was diverted from the natural flow of the river, as distinguished from storage water, into the main canal serving the appellant district; that 11,000-acre feet of natural flow water was diverted in 1931 into the main canal; and that there was delivered into the main canal in 1932 a total of 110,000-acre feet of natural flow water. The capacity of the head of the works serving the appellant district is 1,550 second feet. In 1933 no natural flow water was delivered to appellant district, whereupon appellant filed this suit to require delivery to it of the natural flow water to the extent of the capacity of the main canal serving its district, which would be 1,550 second feet.

The basis of appellant's claim is section 4, art. 15, Constitution of Idaho, which is:

"Whenever any waters have been, or shall be, appropriated or used for agricultural purposes, under a sale, rental, or distribution thereof, such sale, rental, or distribution shall be deemed an exclusive dedication to such use; and whenever such waters so dedicated shall have once been sold, rented or distributed to any person who has settled upon or improved land for agricultural purposes with the view of receiving the benefit of such water under such dedication, such person, his heirs, executors, administrators, successors, or assigns, shall not thereafter, without his consent, be deprived of the annual use of the same, when needed for domestic purposes, or to irrigate the land so settled upon or improved, upon payment therefor, and compliance with such equitable terms and conditions as to the quantity used and times of use, as may be prescribed by law."

This provision is substantially re-enacted in Idaho Code Ann., § 41-814. In accordance with these provisions, appellant claims that the United States had dedicated to the use of appellant district not only the storage water under its contract with the United States, but also, because of the delivery of the natural flow water hereinabove outlined, such natural flow, to the extent of 1,550 second feet.

The remedy used by appellant is a peculiar one. A form of action in Idaho is given by statute (Idaho Code Ann. § 41-1305) for a summary supplemental ad-

judication of water rights. The statute in part provides:

"Where the priority rights upon any stream, canal or reservoir in this state shall have been determined by decree of any court of competent jurisdiction, and thereafter it shall appear that any person or corporation having the right to the use of any part of said water was not included in said decree as a party thereto, and said right was not determined thereby, or that any person who subsequent thereto has acquired any right to the use of such waters, any such person or corporation may have such right adjudicated in the following manner:

"He may bring an action in the district court of the county wherein such decree was entered * * * that the said party shall in his complaint, set out his own right as he is now required to do in cases involving the right of priority of use of water, and he shall further set forth his acceptance as binding upon him of the said decree and the findings of fact and conclusions of law upon which it is based. * * * The court by its decree in said action shall determine the rights of said plaintiff in accordance with the proof submitted but subject to the terms of the original decree hereinbefore referred to: provided, that the right thus established shall not be deemed adjudicated, but prima facie merely, and may be attacked by suit brought in a court of competent jurisdiction at any time by any person deeming himself aggrieved thereby."

Under this statute appellant sought to become a party to the Woodville decree, and have its right to the natural flow adjudicated. Harold L. Ickes "as Secretary of the Interior of the United States of America," was made a party defendant.

The real and basic reason for this suit is shown by the following testimony of Watermaster Crandall:

"The Gooding project had a holdover from 1932 for use in 1933 of 189,695 a. f. During 1932 they drew 110,000 acre feet of natural flow. Had the Gooding project been charged with the 110,000 acre feet as against their storage, the holdover would have been decreased to 79,000 a. f. The benefit received by the Gooding project in 1932, by the use of the direct flow, permitted an additional holdover for irrigation in 1933 of approximately 110,000 a. f. at American Falls.

Thus it can be seen that if appellant district can maintain their claim, in the years where a natural flow is available, it will be able to restrict its use of water to natural flow water at such times, and if the amount of such natural flow water is not charged against its storage rights, the amount of unused storage water would be an additional amount upon which to draw during the following year, owing to the "holdover" rights under its contract with the government.

The Secretary of the Interior filed a motion to dismiss in the lower court, which was not granted. He argues that the motion should have been sustained, because: (1) The United States is an indispensable party, since the suit, as the trial court found, is a suit for partition of real property; (2) that all other parties having similar contracts with the government as that of appellant are vitally interested and may be deprived of their contract rights, and therefore are necessary parties; (3) the statute under which the suit is brought does not authorize a suit against the Secretary, nor does it authorize a suit by a contract holder, but only by an "appropriator."

As to the first ground, it should be noted that the Woodville decree adjudicated the right of appropriation in the Secretary of the Interior. 43 U.S.C.A. § 373 provides:

"The Secretary of the Interior is hereby authorized to perform any and all acts and to make such rules and regulations as may be necessary and proper for the purpose of carrying the provisions of this chapter into full force and effect."

If this suit be considered one for the enforcement of purely administrative duties, such as the assessment of the charges of construction, the United States would not be a necessary party. See Moore v. Anderson (C.C.A.9) 68 F.(2d) 191; Moody v. Johnston (C.C.A.9) 66 F.(2d) 999, and Id. (C.C.A.) 70 F.(2d) 835. In 43 U.S.C.A. § 383, it is provided:

"Nothing in this chapter shall be construed as affecting or intended to affect or to in any way interfere with the laws of any State or Territory relating to the control, appropriation, use, or distribution of water used in irrigation, or any vested right acquired thereunder, and the Secretary of the Interior, in carrying out the

provisions of this chapter, shall proceed in conformity with such laws."

Of course, it could be considered that appellant has acquired a vested right, and is merely attempting to require the Secretary to proceed in conformity with the constitutional provisions hereinabove quoted. However, it seems to us that the nub of the question would be, first, whether or not appellant has acquired a vested right, and to determine in favor of appellant on such a question would be depriving the United States of its property right (claimed by appellant in this suit) without giving the United States an opportunity to defend the suit. This we cannot do; therefore we hold that the suit should have been dismissed on that ground. We pass, as not needing discussion, the other grounds urged for a dismissal.

In view of the foregoing, the decree of the court below must be modified (Gnerich v. Rutter, 265 U.S. 388, 44 S.Ct. 532, 68 L.Ed. 1068, and see Moody v. Johnston (C.C.A.9) 66 F.(2d) 999) by inserting in lieu of paragraph, therein designated "1," the following:

"That said Bill of Complaint herein be, and the same is hereby dismissed, without prejudice, and with costs to the defendant taxed at $143.60, for want of a necessary party; that the United States is a necessary party to this suit; that because the United States was not made a party to this suit, the court is without jurisdiction to adjudicate the water rights set up in the Bill of Complaint."

As modified, the decree of dismissal is affirmed.