## McINTIRE v. UNITED STATES et al.
### No. 1496.

District Court, D. Montana.
Sept. 15, 1937.

Elmer E. Hershey, of Missoula, Mont., for plaintiff.

John B. Tansil, U. S. Atty., and Kenneth R. L. Simmons, Dist. Counsel Indian Reclamation Service, both of Billings, Mont., for defendants United States, Harold L. Ickes, Sec. of Interior, Henry Gerharz, Project Manager Flathead Irr. Project, and nineteen members of Flathead Tribe of Indians.

John P. Swee, of Ronan, Mont., for defendants Pablo and Sterling, and Bilile and Hendricks.

Pope & Smith, of Missoula, Mont., for defendants Flathead Irrigation Dist. and Pablo and Sterling.

PRAY, District Judge.

The above-entitled suit was instituted by the plaintiff for the purpose of establishing water rights to the use of the waters of Mud creek on the Flathead Indian Reservation in Montana and to the extent of 160 inches thereof, with priority date as of April 15, 1900. An injunction is also sought against the United States of America, Harold L. Ickes, Secretary of Interior, and Henry Gerharz, project manager of the Flathead Reclamation Project, the defendants named in the complaint, for the purpose of restraining them from interfering in any manner with the alleged rights of plaintiff; and it is further provided therein that if the court should ultimately find the United States has any interest in said waters in connection with that claimed by plaintiff, that such waters be partitioned, separated, and established by decree of this court.

The material matters alleged are that the said reservation was established by Treaty July 16, 1855, 12 Stat. 975, and also that the Indians of that locality were encouraged to abandon their habits of a nomadic people and become self-supporting. It is also alleged that the lands of the reservation are arid and without aid of irrigation are useless, and that 1 inch of water per acre is necessary for said land.

That Indian predecessors in interest on said date became the appropriators of 160 inches of the waters of Mud creek, and that said waters have become ap-

purtenant to the lands now owned by this plaintiff and that such water rights have never been abandoned and that continuous use of the water on the lands of plaintiff from the date of original appropriation down to the present time is also alleged. Plaintiff relies upon section 19 of the Act of June 21, 1906, 34 Stat. 355, as a basis of her claim to the right to the use of said waters and particularly the following provision of said section:

"Nothing in this Act shall be construed to deprive any of said Indians, or said persons or corporations to whom the use of land is granted by the Act, of the use of water appropriated and used by them for the necessary irrigation of their lands or for domestic use of any ditches, dams, flumes, reservoirs constructed and used by them in the appropriation and use of said water."

The bill also contains allegations to the effect that the United States claims an interest in the waters of Mud Creek and has in effect dammed up the waters and has thereby prevented plaintiff from using the same to the full extent of her alleged rights; she also claims that no other persons are using the waters of Mud creek except plaintiff and the United States. Plaintiff prays that the waters of said creek be divided, partitioned, and separated between plaintiff and the United States according to the provisions of 28 U.S.C.A. § 41, subd. 25. Plaintiff also alleges that the Secretary of Interior above named claims to be in charge of said irrigation project and that Henry Gerharz claims to be the project manager and in direct charge thereof, and "that they are made defendants herein in order that any rights, if any, adverse to the claim of the plaintiff may be established, fixed and determined." Plaintiff further alleges that the defendants are wrongfully and without right denying her claim of right to the use of the waters of Mud creek, independent of the Flathead Irrigation Project, and that defendants claim the right to deprive the plaintiff of the use of the waters of said creek and the right to withhold from flowing into and through the plaintiff's ditch any of the water thereof, and that she has no right whatever to the use of the waters thereof without paying the fees and charges prescribed by the aforesaid project.

On March 23, 1934, Judge George M. Bourquin, a judge of the above-named court and then presiding in the above-titled cause, entered the following order:

"Upon application of Elmer E. Hershey, attorney for plaintiff, and upon the records and files in said case.

"It is ordered that said Harold L. Ickes, Secretary of Interior, defendant herein appear, plead, answer, or demur, by the 14th day of April 1934, under the provisions of section 57 of the Judicial Code of the United States (36 Stat.L. 1102) (title 28 U.S.C.A. § 118), and that a copy of this order together with a copy of the complaint be served upon said defendant forthwith dated this 23rd day of March 1934.

"[Signed]  Bourquin, Judge."

On February 13, 1934, plaintiff caused to be mailed to the Secretary of Interior a copy of the bill of complaint which was received by him on February 17, 1934. On March 31, 1934, plaintiff caused to be served by the United States Marshal for the District of Columbia a copy of the bill of complaint and a copy of the order of the court of March 23, 1934, upon the Secretary of the Interior. It is claimed by the defendants this is the only attempt made by the plaintiff to serve process upon the defendant Secretary of the Interior. The United States was served with process under the provisions of 28 U.S.C.A. § 41, subd. 25. The original bill of complaint was filed subsequent to the decision of the Circuit Court of Appeals, 9th Circuit, in the case of Moody v. Johnston, 66 F.2d 999, and before the decision of the said court in the mandamus opinion in Moody, Project Manager, v. Johnston et al., and other cases, 9 Cir., 70 F.2d 835. The defendants claim that the facts relied upon in the present bill of complaint are identical with the basic facts of the original 9 amended bills of complaint considered by the above-named Court of Appeals in its mandamus opinion. Defendants claim that it is quite evident that this complaint was drafted with the intention of conforming to the pertinent language of the Circuit Court of Appeals in Moody v. Johnston, 9 Cir., 66 F.2d 999, 1003.

The first amended bill appears to be like the original, except the matter relating to Pablo and Sterling and the appropriation of Michael Pablo claimed by the former for lands now owned by them. The motions of Pablo and Sterling to dismiss were denied. The appearances of the defendants United States and Henry Ger-

harz were allowed to stand as to the amended bill. The motion for judgment on the pleadings was denied May 5, 1936..

It appearing that all parties interested in Mud creek had not been joined as parties defendant, plaintiff applied for permission to include others, which was granted, and about thirty-five new defendants were added. The second amended bill is like the first except in paragraphs XIV and XV. It is alleged that the defendants added claim some interest in the waters of Mud creek, and that the Flathead Irrigation District is a corporation. In behalf of the United States and Henry Gerharz, there were special appearances and objections to jurisdiction. The second or final amended complaint was never served upon Harold L. Ickes, Secretary of the Interior, no order was ever made by the court directing the Secretary of the Interior to appear by a day certain respecting the second amended complaint, and no appearance was made by the Secretary. Motions to dismiss were filed by defendants Hendricks, Billie, and nineteen members of the Flathead Tribe; also by the Flathead Irrigation District; answers were filed by the foregoing defendants on November 23, 1936, and by A. M. Sterling and Alex Pablo. The separate answer of the district corporation was filed on November 24, 1936, to the cross-complaint of defendants Sterling and Pablo.

The United States answered that it had not consented to be sued; that the suit was not one brought for the partition of lands; that it is in fact and legal effect one brought to determine the relative priorities and rights of the parties thereto to the use of the waters of Mud· creek; and that the facts fail to state a cause of action in equity against the United States.

In his answer defendant Gerharz raises certain pertinent issues. He has no knowledge as to the date of construction of the ditch in paragraph III of plaintiff's amended complaint, or the size of the ditch or that the waters therein alleged to have been appropriated were appurtenant to the lands described therein; as to the issuance of patent in fee to plaintiff's Indian predecessors in interest, or as to the claim of continuous use of the waters aforesaid down to the present time. It is admitted that the United States claimed an interest in the waters of Mud creek and that it dammed up such waters. It is denied that plaintiff's right to use these waters became vested prior to the claim of the United States, and that under the Act of June 21, 1906, no right existed on the part of the United States to deprive plaintiff of the use of said waters. Defendant claims that all of the acts here complained of were proper and lawful acts done pursuant to the orders, rules, and regulations of the Secretary of the Interior and according to federal law, and that whatever rights plaintiff may have to the use of the waters of Mud creek are subservient to the rights of the United States, and that such rights, if any, were granted by the United States under federal statutes.

Then follows a defense like that of the United States and the district corporation. It is alleged in defense that the United States, through the Secretary of the Interior, recognized all early water right development of Indian and white settlers on the Flathead Indian Reservation prior to the year 1909, and granted a right to a portion of the lands to the extent of 1,000 gallons of water per day for domestic and stock use, and that this particular right is the only one ever granted the Michael Pablo allotment by the United States. Again it is alleged that the United States had acquired title by adverse possession to the waters claimed in plaintiff's second amended bill, and that "Since the date of giving further notice to all settlers along Mud Creek and its tributaries that the United States has appropriated all of the waters of this stream for beneficial use upon the lands of the Reservation, it had continuously and was now using all of said waters, and had done so for a period of more than ten years, adverse to the alleged rights of plaintiff."

Practically the same issues and defenses are raised by the nineteen members of the Flathead Tribe as in the answer of defendant Gerharz. The defendants Sterling and Pablo claim rights to 560 miners' inches of the waters of Mud creek with a date of priority as of April 15, 1900; they also rely upon a notice of appropriation pursuant to Montana law, and upon section 19 of the Act of June 21, 1906, claiming thereunder that the United States recognized their irrigation development. It was ordered during the trial that all new matter raised in any of the answers would be deemed denied.

The record shows that the Secretary of the Interior made a special appearance denying the jurisdiction of the court and

asking for dismissal of the suit. No answer was ever filed by him and no general appearance ever made by the Secretary of the Interior, although he was served with process and a copy of the original complaint. Thereafter the suit progressed and first and second amended complaints were filed; these amended complaints were not served upon the Secretary for obvious reasons. By his action he had declined to enter the suit upon the claim asserted, based upon the statute referred to, that he could be sued only in the District of Columbia.

The preliminary steps herein were taken by Judge Bourquin, before his retirement from the bench, and the law of the case established by him in his orders; he was a judge of co-ordinate jurisdiction with the present presiding Judge, acting in the same case and upon the same questions and record, and therefore the present presiding judge will continue upon the theory and orders adopted and entered by him, irrespective of his own views as to the questions presented and heretofore decided by Judge Bourquin. Having adopted the theory and law upon which Judge Bourquin rested the case, it now becomes important to ascertain whether the allegations of the complaint have been sustained by evidence that is clear and convincing.

It appears from the evidence in the case that on or about the 15th of April, 1900, and for nine years prior thereto, Michael Pablo, an Indian allottee, was in possession of the land hereinafter described, and dug an irrigation ditch from Mud creek carrying 160 inches or 4 cubic feet of water per second of the waters of said creek to his allotment for irrigation purposes and said waters were used to irrigate his allotment; that such appropriation was made long prior to the survey thereof and while the lands were unoccupied and unclaimed. It appears from the evidence that the ditch was of sufficient size to carry the waters appropriated and that the said Michael Pablo thereby became the appropriator of 160 inches of Mud creek on or about the date mentioned, and that the same has become appurtenant to the land above described and the appropriation thereof has not been abandoned.

It further appears from the proof that on January 25, 1918, a patent in fee was issued Agatha Pablo, wife of Michael Pablo, for the lands allotted to him and on October 5, 1918, a fee patent was issued to Agatha Pablo for said lands allotted Lizette Barnaby, and that afterwards said lands were sold and transferred to the plaintiff in this case and that plaintiff is now the owner in fee of said lands which were thus allotted and patented to both of the said Indians, and that the waters so appropriated are appurtenant thereto.

The plaintiff herein places special emphasis upon the act of June 21, 1906, as well as upon the Treaty entered into by the government, both of which were heretofore referred to.

It appears that no other parties are using the waters of Mud creek except this plaintiff, Alex Pablo, and A. M. Sterling, and the United States acting through the Flathead Reclamation Project, and that the four are tenants in common or joint tenants in the use of said waters. That it appears from the proof that the waters of Mud creek can be divided, partitioned, and separated so that the amount of water this plaintiff has a right to use can be determined.

The defendants Alex Pablo and A. M. Sterling each claim that the appropriation of Michael Pablo, as alleged in plaintiff's complaint, was also made for additional lands now owned by them, and that they were made defendants in order that their rights might be determined. The other defendants mentioned in the complaint were named in order that they might have an opportunity to set forth any rights or interests, if any, claimed by them.

The patent for the lands embraced in the allotment of Michael Pablo and the patent for the lands embraced in the allotment of Lizzie Barnaby, both of which were issued to Agatha Pablo, were received in evidence; one of these patents was for the west half of the northeast quarter and the other for the east half of the northeast quarter of section 14, township 21 north, range 21 west. Subsequent conveyances were introduced in evidence showing that plaintiff is the owner of the land described in her complaint. There seems to be no question so far as the proof is concerned that prior to 1891 a ditch was dug conveying water to these lands for irrigation purposes and for watering the stock of Michael Pablo. The water from this ditch was sufficient to cover all the 160 acres now owned by the plaintiff.

The evidence further discloses that at an early day what was known as the

Pablo ranch, including the two eighties above mentioned, was one of the best-known places on the reservation and produced large crops of grain. Plaintiff asks for decree allowing her 160 inches of the waters of Mud creek, and the evidence shows that this amount of water would be sufficient for irrigation of crops grown thereon; in other words, that 1 inch per acre would be sufficient.

■ Nothing in the Act of June 21, 1906, should be construed to deprive any of said Indians of the use of the water appropriated and used by them for the necessary irrigation of their lands. It conclusively appears that the water right claimed by plaintiff was appurtenant to her lands. The leading authorities to sustain the right of appropriation under the foregoing state of facts are to the effect that the government in its dealing with the Indians may create property rights which once vested even it cannot alter. Morrow v. U. S., 8 Cir., 243 F. 854, 856; Williams v. Johnson, 239 U.S. 414, 420, 36 S.Ct. 150, 60 L.Ed. 358; Sizemore v. Brady, 235 U.S. 441, 449, 35 S.Ct. 135, 59 L.Ed. 308; Choate v. Trapp, 224 U.S. 665, 32 S.Ct. 565, 56 L.Ed. 941; English v. Richardson, 224 U.S. 680, 32 S.Ct. 571, 56 L.Ed. 949; Jones v. Meehan, 175 U.S. 1, 20 S.Ct. 1, 44 L.Ed. 49; Chase v. U. S., 8 Cir., 222 F. 593, 596; Scheer v. Moody, D. C., 48 F.2d 327; Ickes v. Fox et al., 300 U.S. 82, 57 S.Ct. 412, 81 L.Ed. 525; Winters v. U. S., 9 Cir., 143 F. 740, 749; Skeem v. U. S., 9 Cir., 273 F. 93, 95; U. S. v. Hibner, D. C., 27 F.2d 909, 911.

A. M. Sterling and Alex Pablo, defendants, herein presented claims showing appropriations made of the waters of Mud creek for the land described. It appears that A. M. Sterling is the owner of land situated in Lake county, in the state of Montana, described as follows: The south half of the northwest quarter of section 14 in township 21 north of range 21, west M. P. M. The proof shows that prior to 1891 Michael Pablo constructed a ditch conveying water from Mud creek to lands now owned by A. M. Sterling and Alex Pablo hereinbefore described and other lands, and that water had been used for irrigation purposes and for watering stock by Michael Pablo and also by Alex Pablo his successor, and by the tenants of A. M. Sterling. The defendants Alex Pablo and A. M. Sterling claim 80 inches of water from said ditch conveying water from

Mud creek to their lands. From the evidence, it appears that the ditch was constructed and a notice of appropriation was made prior to the opening of the Flathead Indian Reservation for settlement in 1910, and that the waters have been used continuously for the irrigation of lands and watering stock by Alex Pablo and A. M. Sterling down to the present time.

From the testimony of Alex Pablo, it appears that he had irrigated on an average each year 15 to 20 acres of land, and also in respect to the land owned by A. M. Sterling, the testimony was to the effect that 20 acres of his land had been irrigated and that the water had been used for domestic purposes and watering of live stock by his tenants; and that 80 inches of water would be necessary for the beneficial use of such lands. Both Pablo and Sterling claim the same rights under the Act of June 21, 1906, as the plaintiff herein, and likewise rely upon the same authorities as are hereinbefore set forth.

■ From the law of the case and the evidence submitted in the opinion of the court, these defendants are entitled to the use of 80 inches of water from the ditch constructed by Michael Pablo. Under the evidence, there seems to be no question that the construction of the ditch and the appropriation of the water was made by Michael Pablo long prior to the time of appropriation by the United States, and therefore the rights of these defendants, his successors in interest, appear to be prior to any of the rights of the United States or any other person or corporation, and that assertion will also hold true in respect to the plaintiff herein.

To advert briefly to the testimony. The witness John Ashley, 76 years old, testified that he lived on the reservation all his life; knew Michael Pablo, who lived at foot of lake about 8 miles from Pablo; all his lands were fenced; he raised wheat and oats and irrigated them from Mud creek, through a ditch about a mile long, 3 feet wide on bottom and 2 feet deep; at the cut it was 15 feet deep and extended 200 yards; the ditch had to be dammed on lower side in one place by use of logs extending about 150 yards; Michael Pablo used the water from the ditch on the Lizette Barnaby land, on that of Alex Pablo and Joe Pablo and on his ranch. When the water was turned in, it filled the ditch "plumb full." Michael Pablo at

one time had a large number of cattle; he raised hay and oats, witness had seen the latter 6 feet high; it was known as a "show place." Three eighties were irrigated and "that was Alex's and the old lady's and Joe's, and this other, the old man's," part of it right along side the fence.

Elmer E. Hershey, as a witness, said he drove by the ditch in 1891 and saw quite a large quantity of water flowing in it; ditch was in same place that it is today, and "road was fenced on both sides, and strung along the ditch, then on the east side and west side both, just as it is today, at the north-end of the Barnaby land and Michael Pablo land."

Jean McIntire in 1907 saw large crops growing on the land. Impossible to raise hay, grain, oats, or barley, or anything of that sort without irrigation.

Mr. Moody, the project engineer, told him he had no right to use of the water for irrigation, only to use for domestic purposes and watering stock.

The sheriff's deed was issued in 1924. They have used the water some every year since. The water was used on both the east and west eighties. They irrigated 40 acres of the east 80 which is a meadow, and 20 acres on the west 80. They cleaned out the ditch and took willows and brush out of it.

Bert Lish knew about irrigation—had been irrigating lands for 53 years. Knows the Pablo and Barnaby lands; he said that to do a good job of irrigating would require 2 inches to the acre, because the subsoil is gravel and rock; the top soil is black loam 5 or 6 or 7 inches deep, and the balance rock and sand and gravel with no soil in it.

Mr. Stockton said 1½ to 2-acre feet per acre, or 1 to 2 inches on the land would be required for proper irrigation.

Alex Pablo, a defendant, claims prior right to use of waters of Mud creek. His allotment joins Michael Pablo land on the northwest. His 80 runs east and west and joins the north 40 of the Michael Pablo land. He has lived there all his life; was born in 1889 and is a son of Michael Pablo. There was a ditch from Mud creek running to his land and Alex Pablo's, and water has flowed in that ditch ever since he was old enough to remember, and is still flowing in it. Michael Pablo used the water for stock purposes, domestic and some for irrigation; he was engaged in the stock business. He used the water on his own allotment and on Alex Pablo's allotment and on his wife's allotment for irrigation purposes. Michael Pablo irrigated 20 acres of Alex Pablo's allotment for hay and pasture land.

Michael Pablo flooded or irrigated about 25 acres of his wife's land now owned by the defendant A. M. Sterling. He says water is necessary to raise crops and has been used most of the time. The ditch runs across his father's allotment now owned by the plaintiff. Alex testified that the irrigation of his land and his mother's had been almost continuous since he was old enough to do farming.

■ Thomas C. Moore has irrigated some of the land in question; he stated that he had not done much during the past 2 or 3 years as there was not enough water coming down, and he did not intend to make many repairs while the water question remained unsettled.

The foregoing is the substance of the testimony of witnesses who resided on the lands in question or came in close contact with them. Certain affidavits and other proof have been submitted by defendants, but, in the court's opinion, are not sufficient to cast discredit upon the claims of priority of right to the use of water from Mud creek by the plaintiff Pablo and Sterling; and much of the proof is entirely irrelevant in view of the theory of the case adopted herein. The evidence shows that long prior to the commencement of the Flathead Irrigation Project the waters were appropriated in the manner and to the extent hereinabove set forth. To quote the language of Judge Bourquin in Scheer v. Moody, D. C., 48 F.2d 327–333: "It would seem the ditches would carry more water, but the extent of the use is the measure of the right, when dilatory application has been interrupted by the government's intervening appropriation as here."

■ It seems possible that the Circuit Court of Appeals in Moody v. Johnston, 9 Cir., 70 F.2d 835, 840, may have meant, when it said: "We think the interests of the parties will best be litigated in a separate suit brought for that purpose," that the government ought to commence a suit against all of these defendants and all other interested parties and finally dispose of all material issues at one time; such a course would do away with most of the questions raised by government counsel in this and other suits of a like character

which may remain pending for an indefinite period before the rights of the parties including the government are finally determined. It is apparent that the Secretary of the Interior is an indispensable party; counsel evidently believe that he can be sued only in the District of Columbia, and if that is the law governing in this suit, then what has been done herein would seem to be of no avail and these important questions no nearer settlement than they were in the beginning. Relief will be awarded as above indicated, and counsel will present findings of ultimate facts.