## UNITED STATES v. CUTLER.

### No. 2547.

District Court, D. Idaho, E. D.

March 13, 1941.

John A. Carver, U. S. Dist. Atty., and E. H. Casterlin and Paul S. Boyd, Asst. U. S. Dist. Attys., all of Boise, Idaho, for plaintiff.

Ben W. Davis and Ralph H. Jones, both of Pocatello, Idaho, for defendant.

CAVANAH, District Judge.

An information was filed against the defendant, charging him with a violation of the Migratory Bird Treaty of August 16, 1916, 39 Stat. 1702, and the Act of July 3, 1918, as amended, 16 U.S.C.A. § 703 et seq., which is a treaty between the United States and Great Britain, in the killing of a wild duck after 4 P. M.

A motion to quash and a demurrer were presented by the defendant, which assert that the information fails to state a public offense against the laws of the United States.

The principal and controlling question presented is; Can Congress, after the

adoption of the original treaty of July 3, 1868 and ratified February 16, 1869, 15 Stat. 673, between the United States and the Shoshone (Eastern Band) and Bannock Tribes of Indians, make it an offense, by statute, to kill "at any time or in any manner," any migratory bird included within the terms of the convention between the United States and Great Britain on August 16, 1916, 39 Stat. 1702, and as amended July 3, 1918, by an Act of Congress?

The original treaty as ratified, and which has not been modified, expressly, and in plain words, provides that an Indian shall have the right to hunt on unoccupied lands of the United States so long as game may be found thereon, within the Fort Hall Indian Reservation, which was set apart for their use. The nature of the grant embodied in the treaty was not one to the Indians, but was one from them to the United States, and all rights not specifically granted were reserved to them. Winters v. United States, 207 U.S. 564, 28 S.Ct. 207, 52 L.Ed. 340; United States v. Winans, 198 U.S. 371, 25 S.Ct. 662, 49 L.Ed. 1089. It contains no provisions that the United States shall have the right by statute or regulation to prohibit the Indians to hunt, at any time and in any manner, any birds. That right was reserved to the Indians in the grant from them, which was an exclusive one within the reservation, and when in considering treaties with Indians and Acts of Congress relating to their rights, we should not forget the well known liberal application of the principle, that grants by them should be regarded "strictissimi juris" and all uncertainties resolved in their favor. Winters v. United States, supra. There is no uncertainty in the wording of this treaty, for the Indians reserved the right to hunt all kinds of birds at any time and in any manner, and no limitation or restriction can, after the adoption of the treaty, be imposed by the United States as to when and what kind of birds the Indians may kill upon the reservation.

We must not forget that the Indians had command of the lands and of their beneficial use, whether kept for hunting or other beneficial use, within the reservation, at the time the treaty was adopted, and they did not give up the right to hunt, but expressly reserved that unlimited and unrestricted right in the treaty.

The construction of the Treaty here disposes of the question that a public of-fense is not stated in the information for the charge there is predicated on an Act of Congress which does not apply to the rights of the defendant under the terms of the treaty here.

This treaty was construed by this Court in the case of United States v. Hibner, D.C., 27 F.2d 909, where the water rights of the Indians were involved within this reservation, and the force and effect of the construction placed on the treaty there is applicable to the Indians' reserved right to hunt.

It follows therefore, that the motion to quash and the demurrer are sustained, and the information dismissed, but the motion to dismiss based on the ground that the alleged offense is of a trivial nature is overruled.