**MOORE et al. v. ANDERSON et al.***

**SAME v. GRAHAM et al.**

Nos. 7196, 7197.

Circuit Court of Appeals, Ninth Circuit.

Dec. 22, 1933.

*Rehearing denied April 13, 1934.

F. A. Kern, of Ellensburg, Wash., Roy C. Fox, U. S. Atty., and E. J. Farley, Asst. U. S. Atty., both of Spokane, Wash., and B. E. Stoutemyer, Dist. Counsel, and Spencer L. Baird, Asst. Dist. Counsel, Bureau of Reclamation, both of Portland, Or., for appellants.

Stephen E. Chaffee, of Sunnyside, Wash., for appellees.

Before WILBUR, SAWTELLE, and GARRECHT, Circuit Judges.

SAWTELLE, Circuit Judge.

The above-entitled causes, hereinafter referred to as the Anderson case and the Graham case, involve similar questions of law and were heard together in the District Court on motion to dissolve and on motion to modify the temporary injunctions herein.

On the application of the appellees, the court below issued temporary injunctions commanding the appellants (1) to desist from diverting the waters of the Sunnyside Canal and laterals therefrom as described in the bills of complaint, from the lands known as old supplemental water right lands, comprising about 28,700 acres, and from the lands of the appellees, covered by the old supplemental water right contract, which waters might be necessary successfully to irrigate the land in question and the crops growing thereon, "and in conformity to and in harmony with the amount of water delivered by" the appellants "to each tract of land covered by said water rights for a period of more than twenty years, and in harmony with the rules and practice that have been in force prior to the recent regulation of the Bureau of Reclamation relative to what is known as excess or rental water"; (2) to open forthwith the headgates and permit that supply of water which is necessary successfully to irrigate each tract of land, and the crops growing thereon, and in harmony with the practical determination made by the appellants, etc., "and in harmony with the practical furnishing of water prior to the regulations of the Bureau of Reclamation relative to excess or rental water, and until the further order of this Court."

Thereafter an amended bill of complaint asking that the injunction be made permanent was filed in each case. The amended complaints are similar in most respects, but are not the same.

The material allegations of the amended complaint in the Anderson case are as follows:

Prior to 1906, the Washington Irrigation

Company owned the Sunnyside Main Canal, at Sunnyside, Wash., and the laterals and distribution system therefrom, as well as the water appropriations from the Yakima river. Pursuant to an act of Congress of June 17, 1902, known as the Reclamation Act (32 Stat. 388), the United States purchased from the company the canal and its appurtenances. At the time of the purchase, 28,720 acres of old supplemental water right lands, which include the Anderson lands, had appurtenant thereto what is known as the Washington Irrigation Company water right, which was insufficient beneficially and successfully to irrigate the 28,720 acres.

Shortly after the purchase by the United States, the Bureau of Reclamation negotiated with the owners of the old supplemental water right lands relative to furnishing water for irrigation purposes, and represented to the owners that the government would construct adequate storage facilities to supplement the natural flow of the river and would furnish an adequate supply of water.

Accordingly, Anderson and his wife entered into a contract with the government for the purchase of a supplemental water right; a copy of the contract being attached to the complaint. It is further alleged that the Andersons fully complied with the terms of the contract and have made all the required payments. The contract was acknowledged July 30, 1910.

For more than twenty years after the execution of the contract, the "authorized agent of the United States" determined the amount of water necessary to irrigate the land, and the amount so determined was delivered to the Andersons by such authorized agent.

In the latter part of May, 1932, however, the appellants notified the Andersons that, unless they signed a new contract to pay a water rental for all water in excess of a certain classification, no water in excess of that amount would be delivered to any of the old supplemental right lands after June 1, 1932, and that the headgates would be shut down. It is alleged that the amount specified as to Anderson's lands was 3½ acre feet per acre per annum, "on an average less than the amount that had been determined by actual experience of over twenty years to be the amount necessary to successfully irrigate said land and the amount that could be beneficially used thereon as determined by the authorized agent of the United States and the amount actually delivered."

The complaint sets forth the text of a "water rental application," as follows: "The undersigned applicant requests excess water under public notice issued by the Secretary February 19, 1932, and agrees to pay applicable charges, with 6 per cent. interest from December 1, 1932, until paid. He further agrees that water may be withheld from his land after 1932 until such charges are paid. It is understood that advance payment will be required in 1933 if the 1932 rental charge remains unpaid at that time."

It is therefore evident that these excess charges were fixed by the Secretary of the Interior himself; yet the complaint goes on to say: "That these defendants [appellants] claiming to act as Superintendent, Irrigation Manager, Watermasters and officials of the Bureau of Reclamation of the United States of America but without warrant of law or contract did wrongfully and unlawfully and contrary to the terms of all contracts * * * and contrary to the practical construction of said contracts for a long term of years and contrary to the terms of the Reclamation Act did on or about June 1st, 1932, shut off the supply of water from the land of your orators * * * in excess of 3½ acre feet per acre per annum measured at the land * * * and did proceed then and there to destroy all water belonging to your orators * * * in excess of 3½ acre feet per acre per annum measured at the land by dumping said water above said amount into waste ways and did proceed then and there to destroy said water above the amount specified as to each of the other Old Supplemental Water Right Lands by dumping said water above the amount specified into waste ways from which it ran into the Yakima River, thence into the Columbia River and into the Pacific Ocean, completely destroying the value of said water for all purposes. * * *"

It is then asserted that the ruling and order requiring a new contract to be entered into and the acts of the appellants as previously set forth in shutting down the headgates "were arbitrarily made and were made without regard to the prior determination by the authorized agent of the United States as to the amount of water necessary to successfully irrigate said land and the amount that could be beneficially used thereon," etc.

The complaint alleges that, at the time of the commencement of the action, a "mandatory injunction" was issued requiring the appellants to deliver the amount of water necessary to irrigate the tract in question, and that, pursuant to the mandatory injunction, the appellants have actually furnished all the water necessary to irrigate the land. It is al-

so asserted that, at the time the headgates were shut down, "water was actually being wasted and there was more than a sufficient amount of water available to furnish the irrigation requirements of all lands within said project, which said water had actually been diverted from the Yakima River and was flowing in the Sunnyside Main Canal and laterals leading therefrom *and was under the direct supervision and control of these*" appellants. (Italics our own.)

In view of the foregoing allegation as to the appellants' "direct supervision and control" over the water, it is difficult to understand the previous allegation that the appellants were merely "claiming to act" as reclamation officials. Read as a whole, the amended bill of complaint clearly recognizes the official capacity of the appellants.

Allegations of irreparable injury are then set forth.

In each case, the appellants filed an amended motion to dismiss the amended bill of complaint, a motion to dissolve the temporary injunction, and a motion to modify the temporary injunction. Affidavits were filed in support of the latter two motions. The reasons given in support of the motion to dismiss are, by reference, made part of the motion to dissolve the temporary injunction.

The court entered an order denying the appellants' motion to dissolve and their motion to modify the injunction. From that order, in each case, the present appeals are being prosecuted.

One of the reasons given by the appellants in support of their amended motion to dismiss the amended complaint is "a non-joinder of necessary and indispensable parties defendant," including the Secretary of the Interior. In the assignments of error, also, there is contained the assertion that the order of the court "constitutes an erroneous conclusion as to questions of law in the following particulars: That the Secretary of the Interior is an indispensable party defendant."

In our view of the case, this is the only assignment of error that need be considered.

As we read the record, the acts complained of were done at the direction of the Secretary of the Interior, and he, in turn, had authority under the law to direct that the acts be done.

Under such circumstances, the Secretary is an indispensable party defendant in a suit where the acts of his subordinates are questioned.

In Gnerich v. Rutter, 265 U. S. 388, 391, 392, 44 S. Ct. 532, 533, 68 L. Ed. 1068, the suit was for an injunction against the federal prohibition director for California, restraining him from giving effect to a certain restriction embodied in a permit issued and signed by the prohibition commissioner. The District Court dismissed the bill as not stating the cause of action, and this court affirmed the decree on the ground that the suit could not be maintained without making the Commissioner of Internal Revenue a party defendant. 277 F. 632. The Supreme Court agreed with this court in the view that the Commissioner of Internal Revenue was a necessary party, but reversed the case on the ground that the decree of the District Court should not have been affirmed, since it had been on the merits, and, in the absence of a necessary party, should not have been permitted to stand.

In that case, the plaintiffs alleged that the restriction was put in the permit without any lawful authority; that, if it was authorized by the regulations, the latter were void and that the director by giving effect to it was wrongfully subjecting the plaintiffs to irreparable injury.

On the subject of necessary parties, the Supreme Court said:

"The act and the regulations make it plain that the prohibition commissioner and the prohibition director are mere agents and subordinates of the Commissioner of Internal Revenue. They act under his direction and perform such acts only as he commits to them by the regulations. They are responsible to him and must abide by his direction. What they do is as if done by him. He is the public's real representative in the matter, and, if the injunction were granted, his are the hands which would be tied. All this being so, he should have been made a party defendant—the principal one—and given opportunity to defend his direction and regulations. Litchfield v. Register and Receiver, 9 Wall. 575, 578, 19 L. Ed. 681; Plested v. Abbey, 228 U. S. 42, 50, 51, 33 S. Ct. 503, 57 L. Ed. 724. In principle, Warner Valley Stock Co. v. Smith, 165 U. S. 28, 17 S. Ct. 225, 41 L. Ed. 621, is well in point. There an injunction was sought against the Secretary of the Interior and the Commissioner of the General Land Office to prevent them from giving effect to prior orders of the Secretary alleged to be outside his powers and hurtful to the plaintiff. While the suit was pending the Secretary resigned his office and there was at that time no way of bringing his successor into the suit. So the question arose whether it could be continued against the Commissioner alone. The answer was in the negative;

the court saying (165 U. S. 34, 17 S. Ct. 225, 228, 41 L. Ed. 621):

"'The purpose of the bill was to control the action of the Secretary of the Interior; the principal relief sought was against him; and the relief asked against the Commissioner of the General Land Office was only incidental, and by way of restraining him from executing the orders of his official head. To maintain such a bill against the subordinate officer alone, without joining his superior, whose acts are alleged to have been unlawful, would be contrary to settled rules of equity pleading. Calvert on Parties (2d Ed.) bk. 3, c. 13.'"'

In Webster v. Fall, 266 U. S. 507, 510, 45 S. Ct. 148, 149, 69 L. Ed. 411, the appellant, an adult member of the Osage Tribe of Indians, had brought a suit against the Secretary of the Interior and certain subordinate officers. There had been no service upon the Secretary, and he had not appeared in the suit. The other defendants were served, the case went to trial, and the bill after a hearing was dismissed for want of equity and on the merits.

"But," said the Supreme Court, citing the Gnerich Case, supra, "the suit was one which required the presence of the Secretary, and the bill should have been dismissed for want of a necessary party. * * * The statutory direction to cause quarterly payments to be made * * * is addressed to the Secretary. The power and responsibility are his. Neither Wright nor Wise have any primary authority in the matter. They can act only under, and in virtue of, the Secretary's general or special direction."

A question closely similar to the one now before us was presented to this court in Moody v. Johnston, 66 F.(2d) 999, decided on July 27, 1933. There the defendant-appellant, individually and as project manager of the irrigation project within the Flathead Reservation in Montana, had been enjoined from assessing or causing any assessment against the appellees for the construction, operation or maintenance of the project and from asserting that the appellees had no water right from Finley creek, a natural stream arising within the reservation, and from in any way clouding the right, title, and interest respecting the waters of the stream as determined by the decree to be in the appellees.

In the Moody Cases it was alleged in the bills that the complainants actually owned a water right that was appurtenant to their lands, prior to the construction of the irrigation project by the United States; that the complainants were entitled to the use of a certain quantity of water upon the lands without the payment of costs of operation or maintenance incurred by the Flathead Reclamation Service; and that "defendant unlawfully, illegally and wrongfully diverted the water * * * and not only deprived plaintiffs thereof, but asserted his right so to do, and caused to be levied and assessed against the plaintiffs charges for the operation and maintenance of said Flathead Irrigation Project * * * and the said defendant will continue in the following years to make charges and claims for construction charges, operation and maintenance charges against these plaintiffs"; and "that the plaintiffs have their own independent irrigation system, acquired long prior to June 21, 1906, which was expressly reserved to the predecessors in interest of plaintiffs and which would not be subject to any construction charge thereafter to be made, nor subject to any operation or maintenance charge for supplying water to plaintiffs' land."

Notwithstanding these positive allegations of unlawful and wrongful acts on the part of the defendant in the Moody Cases, this court held that the suit could not be maintained against the defendant therein, either individually or as project manager of the Flathead Irrigation Project, without joining the Secretary of the Interior as a party defendant.

If our holding in those cases is sound, it follows that the judgment in the instant case must be reversed.

The appellees herein contended on oral argument that the Moody Cases and other decisions relied upon by the appellants herein involved the exercise of discretion by the Secretary, and that in all of those cases the Secretary was acting within the law, whereas in the instant case the acts of the defendants are unauthorized by and contrary to law. In other words, as stated in the appellees' brief, "it is alleged in the cases at bar that the acts of the appellants are in violation of the property rights of the appellees."

This argument is not convincing. An examination of the complaints in the Moody Cases will disclose that it was there specifically alleged that the acts complained of were unlawful and wrongful, and resulted in depriving the plaintiffs of vested rights. See, also, Alcohol Warehouse Corp. v. Canfield (C. C. A. 2) 11 F.(2d) 214, 215, and Raichle v. Federal Reserve Bank (C. C. A. 2) 34 F.(2d) 910, 916, 67 A. L. R. 1167.

As stated in the appellees' brief: "The

appellees brought suit in both the instant cases against the same appellants as individuals to enjoin and restrain them from committing a continuous trespass in violation of the federal right of the enjoyment of the use of their property, which trespass consisted of the willful deprivation and destruction of certain real property and/or vested rights to the use of water for irrigation purposes on lands located within the appellee district, and to enjoin the appellants from unlawfully diverting and destroying said water from the persons owning and/or having vested interest in the water and entitled to receive it."

The theory as well as the purpose of the bill is to enjoin the appellants from refusing to deliver to the appellees Graham and Anderson and to other owners of land who are members of the Sunnyside Valley irrigation district the quantity of water to which they claim they are entitled under and by virtue of their respective contracts with the United States.

It must be conceded that such individual appellants are merely acting as agents or subordinates of the Secretary of the Interior, who is the direct representative of the United States in all matters affecting the administration of the irrigation project in question.

In their brief, the appellees insist that "the gist of the temporary injunction is that the appellants 'be and they are hereby commanded *to desist* from diverting the water of the Sunnyside Canal and laterals therefrom.'" Much emphasis is placed upon the word "desist." In their complaints, however, the appellees concede that the injunction granted by the court below was "mandatory," which term, of course, implies that the doing of an affirmative act is commanded. Furthermore, in the second paragraph of the temporary injunction, which we have already quoted, it is made clear that the injunction is more than a mere restraining order, but contains a command that the appellants open the headgates, permit a supply of water to enter the land to an extent necessary to irrigate it, in harmony with "the practical determination made by the" appellants for more than twenty years, etc. Certainly all these commands in the injunction amount to more than a mere order "to desist." While we are not relying solely upon this point of difference from many of the cases relied upon by the appellees, the distinction is worth noting.

The appellees rely heavily upon the case of Colorado v. Toll, 268 U. S. 228, 45 S. Ct. 505, 69 L. Ed. 927. In that case, the local

representative of the National Parks Service was attempting to carry out and enforce the orders and regulations of the Secretary of the Interior, made in violation of law, since there was no showing that the state had ever ceded its jurisdiction to the area in controversy. In the instant case, however, the reclamation or project manager was attempting to carry into effect the orders of the Secretary made in pursuance to the terms of a written contract entered into by the United States and the appellees.

The appellees claim that the appellants (but in reality the Secretary), in determining the quantity of water to which the appellees are entitled under the terms of the contract, have violated or placed a wrong construction upon the contract, in that they have failed to follow the appellees' construction and understanding of the agreement, and the practical construction that the appellants have for many years recognized and adopted. In other words, without making the Secretary a party to the suit, the appellees are in fact asking this court to construe and interpret a contract entered into between themselves and the Secretary of the Interior on behalf of the United States, apparently on the theory that the Secretary's acts and determination are in violation of law and of the appellees' vested rights.

In the Toll Case, supra, the Supreme Court held that, under the facts, the Secretary was not an indispensable party. In our opinion, however, the Toll Case is not authority for dispensing with the Secretary in the instant suit. In the Toll Case, the bill alleged that the regulations that the superintendent of the park was seeking to enforce were beyond the authority conferred by acts of Congress *and* interfered with the sovereign rights of the state. As stated in the opinion, at page 230 of 268 U. S., 45 S. Ct. 505, 506, 69 L. Ed. 927: "The object of the bill is to restrain an individual from doing acts that it is alleged that he has no authority to do and that derogate from the quasi-sovereign authority of the State. There is no question that a bill in equity is a proper remedy and that it may be pursued against the defendant without joining either his superior officers or the United States. [Cases cited.]"

In thus stating the rule, the Supreme Court used the word "authority" as it had been used in the beginning of the opinion; that is, "beyond the *authority* conferred by the acts of Congress." Here the suit is against individuals who are attempting to

carry out instructions of the Secretary made in pursuance to the contract referred to above.

For the foregoing reasons, we hold that the Secretary of the Interior was an indispensable party defendant in the suit now before us, and that, in the absence of the Secretary, the court below should have dismissed the complaints.

The judgment is reversed, without prejudice to the appellees' right to bring another suit in which the Secretary of the Interior has been made a party defendant.