## HARTMANN v. FEDERAL RESERVE BANK OF PHILADELPHIA.

### No. 3443.

District Court, E. D. Pennsylvania.

April 18, 1944.

T. Henry Walnut and Francis Fisher Kane, both of Philadelphia, Pa., for plaintiff.

MacCoy, Brittain, Evans & Lewis, and John E. Forsythe, all of Philadelphia, Pa., for defendant.

KALODNER, District Judge.

Plaintiff filed a complaint against the Federal Reserve Bank of Philadelphia seeking injunctive relief by reason of the "blocking" or "freezing" of his bank account by the Secretary of the Treasury of the United States.

Complainant alleges that the defendant by letter[1] advised him of the "blocking" of his account and stated therein that the action of the Secretary was predicated on his "determination" that the plaintiff "was a national of a foreign country designated in Executive Order 8389, as amended, and within the meaning of Section 5(b) of the Trading with the Enemy Act".[2] The letter also advised the plaintiff he could appeal under General Ruling No. 13[3] from the "blocking" of his account and the "determination" that he was a "national" of a foreign country.

Alleging he is a citizen of the United States and not a "national" of a foreign country, the plaintiff complains he is being deprived of his property without due process of law, and attacks the legal authority of the defendant "whether acting as an agency of the United States or otherwise" to "block" his bank account. He seeks an

---

[1] The letter provides in part: "Information available to the Treasury Department indicates that there is reasonable cause to believe that you are a national of a foreign country designated in Executive Order 8389, as amended, 12 U.S.C.A. § 95 note, and within the meaning of section 5(b) of the Trading with the Enemy Act, as amended, 50 U.S.C.A.Appendix § 616, and that assets held by you, or on your behalf, are assets in which a national of a foreign country designated in Executive Order 8389, as amended, has an interest. Accordingly, the Secretary of the Treasury, pursuant to the provisions of Executive Order 8389, as amended, and section 5(b) of the Trading with the Enemy Act, as amended, has directed us to inform you that all your bank accounts, safe deposit boxes, and other assets held by banks and banking institutions, including brokerage houses and insurance companies, are now blocked accounts, and that you are prohibited from making any payment, transfer, or withdrawal from such account, or from effecting any other transaction specified in section 1 of Executive Order 8389, as amended, except as authorized by an appropriate license. * * *

"Your attention is also directed to General Ruling No.13 and Form TFU–1, copies of which are enclosed. Pursuant to such General Ruling, you are entitled to apply on Form TFU–1 for a hearing. * * * *"

[2] Trading with the Enemy Act of October 6, 1917, Chapt. 106, 40 Stat. 411, as amended by Title III, Sec. 301 of the First War Powers Act of 1941, 55 Stat. 839, 50 U.S.C.A.Appendix § 616.

[3] "(1) This general ruling relates to the procedure to be followed in connection with the filing of applications for the unblocking of accounts or other property in which applications it is alleged that no person having an interest in the property involved is a national of a blocked country.

"(2) Any interested party is entitled to file such an application. Such application shall be filed in the manner provided in section 130.3 of the Regulations, and shall contain full information in support of the administrative action requested. The application for administrative action may be filed on Form TFU–1 or on Form TFE–1 (even though the request for administrative action is not a request for a license), and any documents or other data as may be relevant to the application should be attached to and made a part of the application.

" (3) The applicant is entitled to be heard on the application. If the applicant desires to be heard on the application, either before or after the Treasury Department has taken action on such application, he should so notify the Treasury Department. Such notice should contain an appropriate reference to the application involved and the names of the parties desiring to be heard with respect to the application."

injunction. "\* \* \* restraining the defendant, the Federal Reserve Bank either as agent or as principal from exercising any control of or any authority over the plaintiff's money or assets and from directing plaintiff's domestic bank wherein his money may be deposited as to the manner in which payments may be made out of the plaintiff's account."

Defendant filed a motion to dismiss raising two questions of law: (1) that the Secretary of the Treasury is an indispensable party and neither is nor can be joined as a party-defendant in this action, and (2) that the complaint discloses the plaintiff has an administrative remedy under Rules and Regulations of General Application prescribed by the Secretary of the Treasury and that he has failed to exhaust such administrative remedy.

Since this is a case of first impression it is necessary to consider with great care the very interesting questions presented by the complaint and the motion to dismiss.

Before proceeding to further consideration of that always vexatious problem of "indispensable party" it is essential to discuss the relevant provisions of the Trading with the Enemy Act and Executive Order 8389, as amended, under which the "blocking" of the plaintiff's account took place.

Subsection (1) of Section 5(b) of the Trading with the Enemy Act provides:

"The President may, through any agency that he may designate \* \* \* and under such rules and regulations as he may prescribe \* \* \* regulate \* \* \* any \* \* \* use \* \* \* withdrawal \* \* \* or exercising any right, power, or privilege with respect to, or transactions involving, any property in which any foreign country or a national thereof has any interest."

Subsection (3) of Section 5(b) confers upon the President "the power \* \* \* to prescribe \* \* \* definitions \* \* \* for any or all of the terms used in this subdivision."

Acting under Section 5(b) the President promulgated Executive Order No. 8389, as amended, 12 U.S.C.A. § 95 note which in Section 5E provides:

"The term 'national' shall include, \* \* \*

"(iii). Any person to the extent that such person is or has been, \* \* \* acting or purporting to act directly or indirectly for the benefit or on behalf of any national of such foreign country, \* \* \*."

Section 5E(iv) further declares:

"\* \* \* The Secretary of the Treasury shall have *full power* to determine that any person is or shall be deemed to be a 'national' within the meaning of this definition, and the foreign country of which such person is or shall be deemed to be a national. Without limitation of the foregoing, the term 'national' shall also include any other person who is determined by the Secretary of the Treasury to be, or to have been, since such effective date, acting or purporting to act directly or indirectly for the benefit or under the direction of a foreign country designated in this Order or national thereof, as herein defined." (emphasis supplied)

Section 7 of Executive Order 8389, as amended, provides:

"\* \* \* the Secretary of the Treasury is authorized and empowered to prescribe from time to time regulations, rulings, and instructions to carry out the purposes of this Order and to provide therein or otherwise the conditions under which licenses may be granted by or through such officers or agencies as the Secretary of the Treasury may designate, and the decision of the Secretary with respect to the granting, denial or other disposition of an application or license shall be final."

■ Consideration of the foregoing provisions of the Trading with the Enemy Act and Executive Order 8389, as amended, makes it clear that only the Secretary of the Treasury can "determine" who is a "national" and further that only the Secretary of the Treasury can "block" the funds of the "determined" "nationals".

This view was taken in Carbone Corp. v. First National Bank of Jersey City, 1941, 130 N.J.Eq. 111, 21 A.2d 366, 369. Said the court in discussing a complaint of a depositor seeking to enjoin a bank from "blocking" his account under Executive Order 8389, as amended:

"\* \* \* The Secretary of the Treasury \* \* \* appears to possess the power to determine who is a 'national' and who is not a 'national' in the situation here existing. \* \* \*"

It is all important to note that Congress on two separate occasions, once by Joint Resolution, May 7, 1940, and again by the Act of December 18, 1941, ratified Executive Order 8389.

By Joint Resolution May 7, 1940, 54 Stat. 179, Sec. 2, 12 U.S.C.A. § 95 note, Con-

804

gress specifically "approved and confirmed" the original Executive Order 8389 of April 10, 1940[4] as follows:

"Executive Order Numbered 8389 of April 10, 1940, and the regulations and general rulings issued thereunder by the Secretary of the Treasury are hereby approved and confirmed."

By the Act of December 18, 1941, c. 593, Title III, Sec. 302, 55 Stat. 840, 50 U.S.C.A. Appendix § 617, Congress specifically "approved, ratified, and confirmed" all of the Orders promulgated by the President, as follows:

"All acts, actions, regulations, rules, orders, and proclamations heretofore taken, promulgated, made, or issued by, or pursuant to the direction of, the President or the Secretary of the Treasury under the Trading With the Enemy Act of October 6, 1917 (40 Stat. 411), as amended, which would have been authorized if the provisions of this Act and the amendments made by it had been in effect, are hereby approved, ratified, and confirmed. * * *"

While the Executive Order as it existed when the Act was passed has since been amended,[5] as pointed out in United States v. Von Clemm, 2 Cir., 136 F.2d 968, 970, certiorari denied 320 U.S. 769, 64 S.Ct. 81, such amendment " * * * merely extended to new subject matter, upon facts warranting the extension, a set of regulations already approved by Congress. * * *"

█ It is plain that Executive Order 8389 as amended is not in conflict with the Constitution. As was pointed out in the Von Clemm case, 136 F.2d at page 970, " * * * the constitutionality of Executive Orders under these statutes has often been assumed by courts of the highest authority," and further, " * * * there is much persuasive force in the appellee's argument that the power exerted by the Executive with regard to property of foreign nationals in a time of proclaimed emergency falls within the sphere of foreign relations and is thus free from the limitations imposed on delegated authority."

Clearly the Joint Resolution and the Act of December 18, 1941 and their retroactive ratification of Executive Order 8389 conclusively eliminate all possible question of any improper delegation.

With this background of the authority of the Secretary of the Treasury to "determine" who is a "national" and the power of the Secretary to "block" accounts of designated nationals we come now to a consideration of the question whether the Secretary is an indispensable party in the instant suit.

A regrettable discord exists in the decisions on the issue of indispensable parties. In Brooks v. Dewar, 313 U.S. 354, at page 359, 61 S.Ct. 979, at page 981, 85 L.Ed. 1399, Mr. Justice Roberts stated:

" * * * As this Court remarked nearly sixty years ago respecting questions of this kind, they 'have rarely been free from difficulty' and it is not 'an easy matter to reconcile all the decisions of the court in this class of cases.' * * *"

█ The difficulty in these cases arises from the general venue provision of the Judicial Code, Section 51, 28 U.S.C.A. § 112, providing that an action in the Federal Court that is not based solely upon diversity of citizenship may not be brought against any defendant in a district of which he is not an inhabitant. Since the legal residence of a superior Federal officer is, in general, at the seat of the Government, suit must necessarily be brought in the District of Columbia where the superior officer is held to be indispensable. Obviously the expense, inconvenience and delay of instituting proceedings in Washington make the problem one occurring frequently in the lower courts, since these factors may operate to interfere with access to the Federal Courts.

The history of the doctrine that a superior officer must be joined as an indis-

4 The original Executive Order 8389 of April 10, 1940 which Congress "approved and confirmed" on May 7, 1940, included within the definition of national " * * * all persons acting or purporting to act directly or indirectly for the benefit or on behalf of * * *" a blocked country or subjects, citizens, residents or domiciliaries thereof. The present language of the Order expressly specifying that the Secretary is to "determine" who is a "national" was adopted on June 14, 1941 by the promulgation of Executive Order 8785, amending Executive Order 8389, 12 U.S.C.A. § 95 note.

5 At the time of the passage of the Act, Executive Order 8389 had been amended by Executive Order 8963, dated December 9, 1941 which preceded by just a few days the present amendatory Order 8998 of December 26, 1941, 12 U.S.C.A. § 95.

pensable party in a suit against a subordinate begins with the English case, Vernon v. Blackerby, Ch. 1740, 2 Atk. 144, where Lord Hardwicke considered preposterous a bill against a minor official, whose duties were ministerial, praying that he distribute funds which Parliament had placed under control of his superiors.

In the United States, the principle first found expression in Warner Valley Stock Co. v. Smith, 1897, 165 U.S. 28, 17 S.Ct. 225, 41 L.Ed. 621. A bill was brought to order the Commissioner of Land Office to issue certain land patents and to enjoin further trespasses by government officials. The court found that Congress gave the power to issue land patents to the Secretary of the Interior, with authority to delegate powers to the Commissioner, to be exercised according to rules and regulations laid down by the Secretary. The court, in holding the Secretary indispensable said (165 U.S. at pages 34, 35, 17 S.Ct. at page 228, 41 L.Ed. 621):

"The purpose of the bill was to control the actions of the Secretary of the Interior. The principal relief sought was against him, and the relief asked against the commissioner * * * was only incidental, and by way of restraining him from executing the orders of his official head. To maintain such a bill against the subordinate officer alone, without joining his superior, whose acts are alleged to have been unlawful, would be contrary to settled rules of equity pleading. Calvert, Parties (2d Ed.) bk. 3, c. 13."

Although it is stated that the duties of the subordinate in both these cases were largely ministerial, this is at least doubtful in the Warner Valley case. Another reason for the results in these cases is that in both affirmative relief was asked, and, in the opinion of the court, could not have been given without the active concurrence of the superior officer.

Following 1897, the year of the Warner Valley case, a number of cases were decided by the Supreme Court on their merits without joining the superior officer, and without a consideration of the problem of his indispensability. American School of Magnetic Healing v. McAnnulty, 1902, 187 U.S. 94, 23 S.Ct. 33, 47 L.Ed. 90; Public Clearing House v. Coyne, 1904, 194 U.S. 497, 24 S.Ct. 789, 48 L.Ed. 1092; Swigart v. Baker, 1913, 229 U.S. 187, 33 S.Ct. 645, 57 L.Ed. 1143; State of Missouri v. Holland, 1920, 252 U.S. 416, 40 S.Ct. 382, 64 L.Ed.

641, 11 A.L.R. 984; Leach v. Carlile, 1922, 258 U.S. 138, 42 S.Ct. 227, 66 L.Ed. 511; Hill v. Wallace, 1922, 259 U.S. 44, 42 S.Ct. 453, 66 L.Ed. 822. Similarly in the lower courts: Magruder v. Belle Fourche Valley Water Users Ass'n, 8 Cir., 1914, 219 F. 72; Aycock v. O'Brien, 9 Cir., 1928, 28 F.2d 817.

The problem of indispensability again came before the Supreme Court in Gnerich v. Rutter, 1924, 265 U.S. 388, 44 S.Ct. 532, 68 L.Ed. 1068. Suit was brought against a prohibition director to whom the Commissioner of Internal Revenue had delegated local administration of the National Prohibition Act, 27 U.S.C.A. § 1 et seq., the director having imposed quantitative restrictions in the liquor permit. The bill denied the legality of the restriction even if authorized by the Commissioner of Internal Revenue, and sought to enjoin enforcement of this restriction alleging that the regulations from which the director derived discretion to impose them exceeded the powers Congress had given to the Commissioner. The bill was dismissed on the ground that the Commissioner was indispensable; the Warner Valley case was cited, and the court stated (265 U.S. at page 391, 44 S.Ct. at page 533, 68 L.Ed. 1068):

"The act and the regulations make it plain that the prohibition commissioner and the prohibition director are mere agents and subordinates of the Commissioner of Internal Revenue. They act under his direction and perform such acts only as he commits to them by the regulations. They are responsible to him and must abide by his direction. What they do is as if done by him. He is the public's real representative in the matter, and, if the injunction were granted, his are the hands which would be tied. All this being so, he should have been made a party defendant—the principal one—and given opportunity to defend his direction and regulations."

In the next year the Supreme Court reached the same result on the same reasoning, citing both the Warner Valley and the Gnerich cases, in Webster v. Fall, 1925, 266 U.S. 507, 45 S.Ct. 148, 69 L.Ed. 411. Here, there was a statute to the effect that no moneys be paid to Indians while under the influence of liquor or while good and sufficient reasons existed leading officials, whose duty it was to make such payments, to believe there was any liquor within convenient reach of the Indians. Suit was brought against the Superintend-

ent of the Osage Agency and the special disbursing agent who had refused payment. The attack was based on the ground that the statute and all orders, rules and regulations issued thereunder by the Secretary of the Interior, insofar as the plaintiff was concerned, were unconstitutional. The attention of the court was directed to the cases which it had decided on the merits without considering the problem of indispensability and where the superior was not present. See 55 F.Supp. 805. As to them, the court said, 266 U.S. on page 511, 45 S.Ct. on page 149, 69 L.Ed. 411:

"We do not stop to inquire whether all or any of them can be differentiated from the case now under consideration, since in none of them was the point here at issue suggested or decided. The most that can be said is that the point was in the cases if any one had seen fit to raise it. Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents. * * * In any event, this case falls within the principles definitely established by the Gnerich and Smith cases."

In the same year, another decision on point in the Supreme Court held that the superior is not indispensable. State of Colorado v. Toll, 1925, 268 U.S. 228, 45 S.Ct. 505, 69 L.Ed. 927. The State of Colorado succeeded in obtaining an injunction forbidding the Superintendent of the Rocky Mountain National Park from carrying out a regulation of the Director of the National Park Service under which there was asserted greater authority over the Park than the State allegedly ceded. The bill alleged that the regulations were beyond authority conferred in the Act by Congress, and interfered with the sovereign rights of the State. The Court said there was no question that a bill in equity is the proper remedy and it may be prosecuted against the defendant without joining the superior officer. Two cases were cited for this proposition: State of Missouri v. Holland, 1920, 252 U.S. 416, 40 S.Ct. 382, 64 L.Ed. 641, 11 A.L.R. 984, and Philadelphia Co. v. Stimson, 1912, 223 U.S: 605, 32 S.Ct. 340, 56 L.Ed. 570. In the Missouri case, 252 U.S. at page 431, 40 S.Ct. at page 382, 64 L.Ed. 641, 11 A.L.R. 984, the court said:

" * * * it is enough that the bill is a reasonable and proper means to assert the alleged quasi-sovereign rights of a State."

The Stimson case more clearly reflects the mind of the court: (The action was against the Secretary of War; the claim was made that the United States should be joined.)

"First. If the conduct of the defendant constitutes an unwarrantable interference with property of the complainant, its resort to equity for protection is not to be defeated upon the ground that the suit is one against the United States. The exemption of the United States from suit does not protect its officers from personal liability to persons whose rights of property they have wrongfully invaded. * * * And in case of an injury threatened by his illegal action, the officer cannot claim immunity from injunction process. The principle has frequently been applied with respect to state officers seeking to enforce unconstitutional enactments. * * * And it is equally applicable to a Federal officer acting in excess of his authority or under an authority not validly conferred. * * * American School [of Magnetic Healing] v. McAnnulty, 187 U.S. 94, 23 S.Ct. 33, 47 L.Ed. 90.

"The complainant did not ask the court to interfere with the official discretion of the Secretary of War, but challenged his authority to do the things of which complaint was made. The suit rests upon the charge of abuse of power, and its merits must be determined accordingly; it is not a suit against the United States." 223 U.S. at page 619, 620, 32 S.Ct. at page 344, 56 L.Ed. 570.

The cases in the Circuit Courts professed to follow the law of the Warner Valley, Gnerich and Webster cases. Alcohol Warehouse Corp. v. Canfield, 2 Cir., 1926, 11 F.2d 214; Chamberlain v. Lembeck, 3 Cir., 1927, 18 F.2d 408; Moody v. Johnston, 9 Cir., 1933, 66 F.2d 999; Moore v. Anderson, 9 Cir., 1933, 68 F.2d 191. The Second Circuit also applied the "doctrine" in a case not involving purely administrative procedure. Raichle v. Federal Reserve Bank, 1929, 34 F.2d 910, 67 A.L.R. 1167.

The Circuit Courts did not recognize the existence of State of Colorado v. Toll until the Fifth Circuit gave voice in Yarnell v. Hillsborough Packing Co., 1934, 70 F.2d 435, 92 A.L.R. 1475. The plaintiffs were engaged in buying, packing and shipping citrus fruits; the defendants constituted the Florida Control Committee, which, acting by virtue of regulations established by the Secretary of Agriculture under the A.A.A.,

restricted shipments in interstate commerce of certain citrus fruits. The bill alleged the Control Committee threatened penalties, prohibitions, injunctions and confiscation if plaintiff attempted violation. An interlocutory injunction was granted in the District Court on the broad ground that the sections of the Act and the means adopted for enforcement were invalid. The defendants argued the indispensability of the Secretary of Agriculture. To this the Circuit Court replied:

"We agree at once that the Secretary, not being before the court, could not be enjoined from enforcing his regulations. Gnerich v. Rutter [supra] Webster v. Fall, [supra]. But, if those regulations are indeed invalid, the control committee cannot shield themselves behind the Secretary, or compel compliance therewith in his name. [State of] Colorado v. Toll [supra]. It follows that the Secretary was not an indispensable party. * * * *

"Inasmuch as the court did not acquire jurisdiction over the Secretary of Agriculture, it was powerless to enjoin the suspension or revocation of any license issued by him, or the enforcement of any fine or penalty resulting from orders which under the act only he can make. * * *

"The Secretary has assumed by his license or regulations to confer on the control committee the power to make prorate orders * * * but the control committee has and claims no power to enforce such an order. It is only authorized to report violations of its orders * * * to the Secretary." 70 F.2d at pages 438, 439, 92 A.L.R. 1475.

Similarly Royal Farms Dairy, Inc., v. Wallace, D.C.Md.1934, 7 F.Supp. 560.

In the same year, that court decided Ryan v. Amazon Petroleum Corp., 5 Cir., 1934, 71 F.2d 1, affirmed on other grounds Panama Refining Co. v. Ryan, 1935, 293 U.S. 388, 55 S.Ct. 241, 79 L.Ed. 446. Suit was brought against Ryan, as agent of the Department of the Interior, to enjoin him from enforcing certain provisions of the N.I.R.A. and the Petroleum Code; the bill alleged that the defendant was demanding reports, inspecting the books and properties of the plaintiff, gauging their storage tanks, threatening and intending to prosecute the plaintiffs for violation of the regulations and the Code; that the Act, regulations and Code are unconstitutional, and in any case the regulations and Code exceed the authority given by the Act. Holding

the Secretary not indispensable, the court said (71 F.2d at page 4):

"The Secretary of the Interior is not personally doing or threatening the acts of trespass and of prosecution which are sought to be enjoined. Although the actors may be authorized and incited by him so that he would be a proper codefendant if he were within the court's reach, the court has power to stop the trespassing by those within its jurisdiction irrespective of their claim that they are acting for others. * * * This is not a bill to cancel the Secretary's Regulations, but only to test their efficacy to protect defendants in their alleged trespasses against complainants' rights."

To the same effect is the recent case Warehime v. Varney, D.C.N.D. Ohio, Feb. 29, 1944, 50 F.Supp. 907.

In the same year too, the Supreme Court gave evidence that it considered the Warner Valley, the Gnerich, and the Webster cases uninfringed by the Colorado case. Miguel v. McCarl, 1934, 291 U.S. 442, 54 S.Ct. 465, 78 L.Ed. 901. Here, action was taken against the Chief of Finance for mandatory injunction directing him to pay a certain pension. The court, in discussing the propriety of the relief asked, stated on page 455 of 291 U.S., on page 468 of 54 S.Ct., 78 L.Ed. 901:

"The Chief of Finance is charged by law with the duty of disbursing all funds of the War Department, including the pay of the Army. * * * The disbursing officer to whom the voucher was presented for payment, therefore, is simply, a subordinate of the Chief of Finance, subject to his control and direction, and the suit was properly brought against the latter. The purpose of the suit was to control the action of the Chief of Finance, that is, compel him to pay or cause to be paid, the voucher in question. The disbursing officer as the mere agent of his superior is not an indispensable * * * party. Compare Warner Valley Stock Co. v. Smith [supra]; Gnerich v. Rutter [supra]; Webster v. Fall, [supra]; Alcohol Warehouse Corp. v. Canfield [supra]; Dami v. Canfield [infra]."

In Rood v. Goodman, 5 Cir., 1936, 83 F.2d 28, which may be classified as the "typical postmaster fraud order" case, the Postmaster General issued a fraud order declaring that the plaintiff was using the mails to defraud, and ordering the local postmaster to stamp "fraudulent" all mail addressed

to the plaintiff and return to sender. Suit was brought to enjoin the local postmaster, and the problem of indispensability of the Postmaster General was raised. It was held against this contention:

"This is not a case in which the plaintiff is attempting to compel a subordinate official to exercise a discretion which only his superior can exercise. It is a case in which an official is acting affirmatively against a plaintiff, by seizing his mail, and preventing its delivery. It is that affirmative action which the suit seeks to enjoin." 83 F.2d at page 31.

A similar situation was presented in the same year in the Second Circuit, where the opposite result was reached. National Conference on Legalizing Lotteries v. Goldman, 85 F.2d 66, 67. Judge Hand reiterated, somewhat reluctantly, his "crossfire" explanation for holding the Postmaster General indispensable:

"Officials are frequently puzzled by contrary rulings of inferior federal courts, and can hardly be expected to accept a single one, even if it stands uncontradicted; they may reasonably not give up their views until the final authority has spoken. A subordinate may therefore for a long time find himself in real embarrassment, in a crossfire to which equity will not ordinarily expose a suitor * * *. This, at any rate, is the only reason we have been able to conjure up. Moreover, whether it is the right one or not, we cannot disregard such deliberate and repeated declarations because of what was said in [State of] Colorado v. Toll."

The Second Circuit thus followed its holding in Alcohol Warehouse Corp. v. Canfield, supra. There, the court held the Commissioner of Internal Revenue indispensable to a suit to have declared void acts of his subordinates in revoking permits issued under the National Prohibition Act. In considering the Gnerich case, the court regarded it impossible to see how the Commissioner of Internal Revenue was necessary unless the doctrine covers acts of subordinates, *discretionary as well as ministerial.*

"The cause is of a class now well recognized in the decisions of the Supreme Court, where an official is charged with duties under a statute, which he may and does execute by means of deputies, and where, whatever the former practice, courts will not now review the conduct of the deputies, in the absence of the superior for whom they have acted. The theory which lies back of the doctrine is not altogether clear. * * *

"In the case at bar the Commissioner alone has power to revoke a permit, a power no doubt judicial in its general character, and necessarily to be exercised by deputies. Still they must act under his supervision, and in the end at his direction. We can see no more reason for omitting him from a suit to revise the conclusions of those deputies, than if the question were one of a subordinate's discretion under a regulation (Gnerich v. Rutter), or his decision of a question of fact (Webster v. Fall)." 11 F.2d at page 215.

In reaching this result, the court followed Dami v. Canfield, D.C.S.D.N.Y.1925, 5 F.2d 533. The same result was reached in Jewel Productions, Inc., v. Morgenthau, 2 Cir., 1938, 100 F.2d 390.

In the meanwhile, the Ninth Circuit was developing a doctrine of its own. Moody v. Johnston, 1933, 66 F.2d 999; Moore v. Anderson, 1933, 68 F.2d 191; Berdie v. Kurtz, 1935, 75 F.2d 898; Neher v. Harwood, 1942, 128 F.2d 846. In the last of these cases, the court reviewed existing decisions and stated its analysis; the case itself was the typical postmaster situation that existed in the Rood and National Lotteries cases, and the court reached the result of the latter. The principle announced in the Neher case is to the effect that where it is alleged that the superior acted without warrant or authority in law, that is, where the bill of complaint alleges that the Act itself is unconstitutional or the power was not delegated under the Act of Congress, the superior is not an indispensable party; where, however, the bill alleges only that the superior has abused his discretion under the Act, the superior is indispensable. Neher v. Harwood, supra, 128 F.2d at page 849. Judge Stephens disagrees with the contention that the Yarnell case should be interpreted as holding that the Colorado case overruled the Gnerich case, but admits that Rood v. Goodman is directly opposed to his view. Neher v. Harwood, supra, 128 F.2d at page 851.

The view of the Ninth Circuit has found acceptance in the District Courts: Eastman v. United States, W.D.Wash.1939, 28 F.Supp. 807; Ernest v. Fleissner, E.D.Wis. 1941, 38 F.Supp. 326; Gargilis v. Gleavy, D.Mass. 1942, 45 F.Supp. 721; Schadl v. Boyer and Guillion, E.D.Pa.1944, —— F. Supp. ——.[1] These cases regard it as "set-

---

[1] Rehearing pending at date of publication.

tled law" that the superior is indispensable in cases where the superior is alleged to have abused his discretion, but not indispensable in cases where the issue involves the legal power of the superior to promulgate a regulation or order.

Some courts have decided the issue on equitable grounds. Thus, where it was not shown that the subordinates had any power of enforcement, the relief sought was denied on the theory that the discretionary power of the court should not be exercised when no beneficial result could follow. Redlands Foothill Groves v. Jacobs, D.C. S.D.Cal.1940, 30 F.Supp. 995. In Bailey Gaunce Oil & Refining Co. v. Duncan, D.C.W.D.La.1934, 10 F.Supp. 280, the court tried the case on the merits, being impressed with the argument that the expense, delay and inconvenience of suing in the District of Columbia might operate to deprive the complainant of the right to appeal and force him to submit to an invasion of his rights. (1937) 50 Harv.L. Rev. 796, 801; 37 Col.L.Rev. 140, 142.

The Supreme Court took cognizance of the conflicting decisions in the Federal Courts when attorneys attempted to inject the problem of the indispensable superior into Brooks v. Dewar, supra. Suit was brought against a subordinate of the Secretary of the Interior on the grounds that the Secretary had no authority under the Act to adopt certain regulations and orders. The Supreme Court, speaking through Justice Roberts, said (313 U.S. at page 359, 360, 61 S.Ct. at page 981, 85 L.Ed. 1399):

"The petitioner asserts that the judgment below should be reversed because the suit is one against the United States; because the Secretary of the Interior is an indispensable party, * * *. He admits that earlier cases in this court are against his contention but relies on others which he says sustain his view. As this Court remarked nearly sixty years ago respecting questions of this kind, they 'have rarely been free from difficulty' and it is not 'an easy matter to reconcile all the decisions of the court in this class of cases.' [Cunningham v. Macon & Brunswick R. Co., 109 U.S. 446, 451, 3 S.Ct. 292, 609, 27 L.Ed. 992.] The statement applies with equal force at this day. We are not disposed to attempt a critique of the authorities. Since the jurisdiction and the procedure of the court below are sustained by decisions of this court, we are unwilling to base our judgment upon a resolution of asserted conflict touching issues of so grave a consequence where, as here, the bill fails to make a case upon the merits."

While I have discussed at length the two theories which prevail in this line of cases I am relieved of the burden of deciding which line of authority to follow for in the instant case it is quite apparent that insofar as the matters of which the plaintiff complains the duties of the defendant were wholly ministerial. The Secretary of the Treasury alone and exclusively is empowered to "determine" who is a "national" and to block accounts, and the defendant here simply performed a ministerial function in advising the plaintiff and his bank of the Secretary's determination and action.

On the facts of this case the Secretary of the Treasury would be held indispensable on any theory. But, regardless of "theory" this case fits exactly into the situation described in the language of the Supreme Court in the Warner Valley, the Gnerich and the Webster cases. In the Warner Valley case the court cited Calvert on Parties where the rule is stated as follows:

"The general rule is that a mere agent, having no interest of his own in a suit, ought not to be made a party. * * * In the case of the treasurer of the commissioners of a fund for building churches, Lord Hardwicke says, 'it would be absurd if a bill should lie against a person, who is only an officer, and subordinate to others, and has no directory powers.'" Calvert, Parties, 2d Ed. 1847, page 301.

Particularly appropriate to the instant situation is the following statement in Shields v. Barrow, 1855, 17 How. 130, at page 139, 15 L.Ed. 158:

"Persons who not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final determination may be wholly inconsistent with equity and good conscience."

Calvert stated the same proposition in this language (page 16):

"Another mode of expressing the general rule is * * * whether the relief sought * * * touches any particular person, so as to obtain from him a benefit, or to

fasten upon him a duty: that, if this question is answered in the affirmative, he is a necessary party."

Clearly in the situation here presented "* * * final decree cannot be made without either affecting that interest (of the Secretary) * * *" as stated in Shields v. Barrow, supra, or "* * * so as to obtain from him a benefit, or to fasten upon him a duty * * *" as stated by Calvert. The rule enunciated in Shields v. Barrow was cited with approval in Niles-Bement-Pond Co. v. Iron Moulders' Union, 1920, 254 U.S. 77, 80, 41 S.Ct. 39, 65 L.Ed. 145.

Only the Secretary could recall his determination of the plaintiff as a "national" and "unblock" his account. Even if the injunction which the plaintiff seeks were granted exactly as prayed in the complaint, no benefit would result to him. The defendant could continue its present activity without being guilty of any violation, for the defendant did not, and could not, "block" plaintiff's account, nor order his local bank to refuse to pay over any moneys to him without a license, nor require him to submit reports; these are merely actions of the Secretary of which the Reserve Bank advised the plaintiff. Furthermore, if plaintiff or the local bank violated an order, the Reserve Bank could do nothing except notify the Secretary.

Obviously an order by this court to the Reserve Bank to "unblock" plaintiff's account would be a futility. It would not benefit the plaintiff and the law is well-settled that "if an injunction can accomplish nothing, it should not issue". Withington v. Roberts & Co., D. C., 22 F.Supp. 460, 461. An injunction against the defendant here would certainly not vacate the order of the Secretary of the Treasury.

Taking into account all these factors, it is evident, therefore, that the motion to dismiss the complaint on the score that the Secretary of the Treasury is an indispensable party must be granted.

■ Inasmuch as the Secretary of the Treasury, like other heads of executive departments of the United States, may be sued only in the District of Columbia, the place of his official residence (Butterworth v. Hill, 1885, 114 U.S. 128, 5 S.Ct. 796, 29 L.Ed. 119; Ernest v. Fleissner, supra; Scientific Manufacturing Co. v. Walker, D.C.M.D.Pa.1941, 40 F.Supp. 465; Jewel Productions v. Morgenthau, 2 Cir., 1938, 100 F.2d 390, 391, he cannot be made a party in this jurisdiction.

This conclusion makes academic the second point raised in the motion to dismiss, that is, that the plaintiff has failed to exhaust his administrative remedy under Rules and Regulations prescribed by the Secretary of the Treasury, providing for appeal. However, it must be stated that this point is well taken by the defendant and would of itself warrant a dismissal of the complaint.

■ Briefly stated, the plaintiff contends that the General Ruling No. 13 providing for a departmental review is not a substitute for rights guaranteed by the Fifth Amendment. However, defendant does not contend that the appeal procedure provided by General Ruling No. 13 is a substitute for judicial review. It asserts, however, and properly so, that judicial review may not be had until the remedies prescribed by General Ruling No. 13 have been exhausted. The Secretary of the Treasury has provided a means whereby an administrative review may be had of his action, with full opportunity for hearing. It is a "* * * long-settled rule of judicial administration that no one is entitled to judicial review for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." Myers et al. v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 51, 58 S.Ct. 459, 463, 82 L.Ed. 638.

In Aron v. Federal Trade Commission, D. C., 50 F.Supp. 289, I discussed at length the numerous cases sustaining the rule requiring exhaustion of administrative remedy before recourse can be had to the courts and reference is made to that opinion.

Here the plaintiff has made no attempt to explore the administrative remedy which is available to him and that failure is fatal to his present action.

For the reasons above stated, the motion to dismiss must be granted.

An order may be submitted in accordance with this opinion.