**MITCHELL v. UNITED STATES et al.**
**Civ. A. No. 810–50.**

United States District Court
D. New Jersey.
June 23, 1952.

Thomas C. Mitchell, pro se.

Grover C. Richman, Jr., U. S. Atty., Newark, N. J., by Stuart B. Rounds, Asst. U. S. Atty., Trenton, N. J., for defendants.

FORMAN, Chief Judge.

Plaintiff brought suit in this court against the United States and the Veterans' Administration, an agency of the United States, seeking an adjudication that an insurance policy issued to him under the National Service Life Insurance Act of 1940,

38 U.S.C.A. § 801 et seq., is valid and in full force and effect. His complaint stated that the action arises under 38 U.S.C.A. § 817 and that a disagreement exists between him and the Veterans' Administration on the said policy; that all premiums thereon were paid to and including the month of February, 1950; that on February 28, 1950 plaintiff was stricken with coronary thrombosis, as a result of which he was physically unable to pay the premiums for the month of March, 1950, during that month; that on April 14, 1950 plaintiff paid the premiums for March and April, 1950, but was informed by the Veterans' Administration on April 17, 1950 that the policy had lapsed because of nonpayment of premiums and that application for reinstatement should be made; that such application was filed on April 18, 1950, stating that the plaintiff was then in as good health as on the due date of the defaulted premiums, but said application was disapproved; that all premiums have been tendered to date but have been refused by the Veterans' Administration; and that such action by the Veterans' Administration violated 38 C.F.R. §§ 8.23, 8.24 and 8.25.

Defendants [1] have moved to dismiss the action upon three grounds: (1) that the Veterans' Administration is not a suable entity; (2) that the court lacks jurisdiction over the United States because its consent to be sued in the event of a disagreement as to any claim arising under Chapter 13 of Title 38, does not extend to a suit for the reinstatement of a lapsed policy; and (3) that the complaint fails to state a claim against the defendants upon which relief can be granted.

This action must be dismissed against the Veterans' Administration because Congress has not constituted this agency a body corporate or authorized it to be sued as such. The statutory provisions establishing the agency, 38 U.S.C.A. § 11,[2] together with those concerned with its administration, 38 U.S.C.A. §§ 11a,[3] 808,[4] and 817[5] and the Administrative Procedure Act, 5 U.S.C.A. § 1001 et seq.,[6] cannot be deemed an authorization by Congress for the present suit against the Veterans' Administration, although they might sustain such a proceeding against the Administrator of Veterans' Affairs in the United States District Court of the District of Columbia.[7] The recent

1. The record indicates that service of process was not effected upon the Veterans' Administration although an answer on behalf of both defendants was filed by the United States Attorney for the District of New Jersey.

2. "(a) The President is authorized by Executive order, to consolidate and coordinate any hospitals and executive and administrative bureaus, agencies, or offices, especially created for or concerned in the administration of the laws relating to the relief and other benefits provided by law for former members of the Military and Naval Establishments of the United States, * * * into an establishment to be known as the 'Veterans' Administration,' * * *."

3. "There shall be at the head of the Veterans' Administration an administrator to be known as the Administrator of Veterans' Affairs, * * *. Such administrator, under the direction of the President, shall have the control, direction, and management of the various agencies and activities enumerated in and referred to in section 11 of this title, * * *. All final decisions or orders of any division,

bureau, or board in the Veterans' Administration shall be subject to review, on appeal, by such administrator."

4. See footnote 10, infra.

5. See footnote 8, infra.

6. 5 U.S.C.A. § 1009.
"Except so far as (1) statutes preclude judicial review or (2) agency action is by law committed to agency discretion.
"Rights of review
"(a) Any person suffering legal wrong because of any agency action, or adversely affected or aggrieved by such action within the meaning of any relevant statute, shall be entitled to judicial review thereof.
"Form and venue of proceedings
"(b) The form of proceeding for judicial review shall be any special statutory review proceeding relevant to the subject matter in any court specified by statute or, in the absence or inadequacy thereof, any applicable form of legal action * * * in any court of competent jurisdiction. * * *"

7. See U. S. v. Fitch, 10 Cir., 185 F.2d 471, 474 (J. Bratton dissenting); also,

holding of the United States Supreme Court in Blackmar v. Guerre, 342 U.S. 512, 72 S. Ct. 410, 96 L.Ed. 534, denying a party the right to sue the Civil Service Commission in the United States District Court for the Eastern District of Louisiana is dispositive of this question. Mr. Justice Minton, speaking for the Court, stated, 342 U.S. at pages 515–516, 72 S.Ct. at page 412:

"* * * When Congress authorizes one of its agencies to be sued eo nomine, it does so in explicit language, or impliedly because the agency is the offspring of such a suable entity. See Keifer & Keifer v. R. F. C., 306 U.S. 381, 390, 59 S.Ct. 516, 518, 83 L.Ed. 784.

"Since the Civil Service Commission is not a corporate entity which Congress has authorized to be sued, a suit involving the action of the Commission generally must be brought against the individual Commissioners as members of the United States Civil Service Commission. No such suit was brought here, and no service was had upon the individuals comprising the Civil Service Commission. Therefore, neither the individuals comprising the Civil Service Commission nor the Commission as a suable entity was before the District Court.

"We do not have a question of venue as to defendants until we have defendants before the court. * * *

"It is further suggested that judicial review is authorized by the Administra-

Taft v. U. S., 2 Cir., 127 F.2d 876, 877, 878; Ginelli v. U. S., D.C., 94 F.Supp. 874.

8. 38 U.S.C.A. § 817: "* * * In the event of disagreement as to any claim arising under this chapter, suit may be brought in the same manner and subject to the same conditions and limitations as are applicable to the United States Government life (converted) insurance under the provisions of sections 445 and 551 of this title."

38 U.S.C.A. § 445: "In the event of disagreement as to claim, including claim for refund of premiums, under a contract of insurance between the Veterans' Administration and any person or persons claiming thereunder an action on the claim may be brought against the United

tive Procedure Act, 5 U.S.C. § 1001 et seq., 5 U.S.C.A. § 1001 et seq. Certainly there is no specific authorization in that Act for suit against the Commission as an entity. Still less is the Act to be deemed an implied waiver of all governmental immunity from suit. If the Commission's action is reviewable under § 1009, [2] it is reviewable only in a court of 'competent jurisdiction.' Assuming, without deciding, that Commission action is reviewable by court action under § 1009, it must follow that review must be in that district where the Commissioners can be served. Since we have held that the Civil Service Commission is not an entity that may be sued anywhere it may be functioning but only the Commissioners may be sued where they can be served, § 1009 does not aid petitioner in an action brought in Louisiana. The courts of the District of Columbia are the only courts of 'competent jurisdiction' to reach the members of the Civil Service Commission."

Neither has this court jurisdiction to entertain the action against the United States because the United States may be sued only with its consent, and 38 U.S.C.A. § 817,[8] incorporating 38 U.S.C.A. § 445 [8], the only statute which expressly vests United States District Courts with jurisdiction over suits against the United States on contracts of National Service Life Insurance, is limited to suits for recovery of monetary benefits

States either in the district court of the United States for the District of Columbia or in the district court of the United States in and for the district in which such persons or any one of them resides, and jurisdiction is hereby conferred upon such courts to hear and determine all such controversies. * * *

* * * * *

"The term 'claim', as used in this section, means any writing which alleges permanent and total disability at a time when the contract of insurance was in force, or which uses words showing an intention to claim insurance benefits, and the term 'disagreement' means a denial of the claim by the Administrator of Veterans' Affairs or someone acting in his name on an appeal to the Administrator. * * * *"

upon policies which are in force and effect and does not include an action brought for the reinstatement of a policy which has lapsed, such as the case with which we are here confronted. Meadows v. U. S., 1930, 281 U.S. 271, 50 S.Ct. 279, 74 L.Ed. 852; Taft v. U. S., 2 Cir., 1942, 127 P.2d 876; U. S. v. Fitch, 10 Cir., 1950, 185 P.2d 471; Ginelli v. U. S., D.C.1950, 94 F.Supp. 874.

Plaintiff, however, cites as sustaining the contrary view, the case of Unger v. U. S., D.C.E.D.Ill.1948, 79 F.Supp. 281, where the court held that it had jurisdiction to entertain a declaratory judgment proceeding adjudicating that a National Service Life Insurance policy should be issued to the plaintiff in that case. The court attempted to distinguish the Meadows and Taft cases, supra,[9] by stating that the 1946 amendment to § 808 of Title 38 [10] enlarged the scope of judicial review to include, by reasonable implication, the case at its bar, although it admitted that there was no express statutory consent to the use of a declaratory judgment proceeding against the United States in such a case. In support of its views it relied on a statement by Chief Justice Vinson in U. S. v. Zazove, 334 U.S. 602, 611, 612, 68 S.Ct. 1284, 1288, 92 L.Ed. 1601, that the "amendment [was] designed to eliminate the finality of the decisions of the Administrator on insurance matters". But that case was a suit by a beneficiary to recover on a claim for $5,000 under a policy, a proceeding over which the court had unquestioned jurisdiction. The issue involved was whether a Veterans' Administration regulation was in accord with a proper construction of a section of the National Service Life Insurance Act. The reference to the purpose of the words of Chief Justice

Vinson is too broadly construed in the Unger case when they are held to be a basis for a suit against the United States. The quoted words had no greater connotation than that they were, again in the words of Chief Justice Vinson,

"indicative of congressional concern that the *regulations* of the Veterans' Administration be subject to more than casual * * * scrutiny when they are based upon a *controverted construction of the statute.*" (Italics added.) 334 U.S. at page 612, 68 S.Ct. at page 1288.

I agree that § 808, as amended, indicates an extension of procedures available to secure judicial review of the *decisions of the Administrator* on insurance matters and, when construed with the Administrative Procedure Act, would appear to countenance judicial proceedings against the Administrator himself (see footnote 7, supra), particularly when insurance matters are involved which are unrelated to the recovery of monetary benefits. But the amendment does not provide the necessary specific consent by the United States to permit suit to be brought against it. Therefore, I cannot follow the decision in the case of Unger v. U. S., supra.[11]

The limitation of judicial remedy to a suit against the Administrator which must be brought in the District of Columbia imposes serious hardship upon a plaintiff in this type of litigation.[12] But in suits involving superior federal officers this is a frequently recurring problem that only the Congress can solve.

While the merits of plaintiff's application for reinstatement are not before the court

---

9. The Fitch and Ginelli cases, supra, were later holdings.

10. "* * * Except in the event of suit as provided in section 817 of this title, *or other appropriate court proceedings,* all decisions rendered by the Administrator under the provisions of this chapter, or regulations *properly* issued pursuant thereto, shall be final and conclusive on all questions of law (and) or fact, and no other official (or court) of the United States, *except a judge or judges of the*

*United States courts,* shall have jurisdiction to review (by motion or otherwise) any such decisions." The words in parentheses were dropped, and the italicized words were added by the 1946 amendment.

11. See also Ginelli v. U. S., D.C., 94 F. Supp. 874, in which the court expressly declined to follow the Unger decision.

12. See Hartmann v. Federal Reserve Bank of Philadelphia, D.C., 55 F.Supp. 801, 804.

on this proceeding, from the arguments on this and a former motion before the court it is clear that the Veterans' Administration declined reinstatement on an application made pursuant to 38 C.F.R. § 8.25 [13] within 15 days after expiration of the grace period, i. e., on April 14, 1950, upon the ground that the comparative health requirements were not met because plaintiff was totally disabled on the date of his application for reinstatement even though he was, at least, equally disabled with coronary thrombosis on the date the premium was due. This action was taken apparently in reliance on 38 C.F.R. § 8.24.[14] When later plaintiff made an application for waiver of premium under 38 C.F.R. § 8.40 [15] on the ground that he was totally disabled for six months, that application was rejected because the agency found that he was not totally disabled after May 31, 1950, since he attended part time in his law office. That date was within three months after lapse and raises the obvious question of whether his application for reinstatement made on April 14, 1950 should not have been regarded as a continuing one and have entitled him to reinstatement under the comparative health requirements of 38 C.F.R. § 8.23 (a).[16]

Having in mind the necessity of strict rules governing default in payment of premiums the circumstances of the plaintiff in this case reflects a reliance upon technicalities by, and a harsh attitude of, the Veterans' Administration which could not have been more coldly calculating and bureaucratic if it were the most grasping commercial company instead of an agency of the government dealing with one of its veterans.

Nevertheless, reluctantly, I find that the complaint fails to state a claim against either defendant upon which relief can be granted and the motion to dismiss must be sustained. An order in conformity herewith should be submitted but without prejudice to any other action plaintiff may take to achieve relief in any other forum.

13. "Where a premium on National Service life insurance is not paid within the grace period but is tendered not more than 15 days after the date of expiration of the grace period, such premium may be regularly applied as premium for the unpaid month, provided the insured at the time of tendering the delayed premium is in as good health as he was on the due date of the premium in default, and furnishes a statement to that effect not more than 31 days after the date such delayed premium was tendered."

14. "The applicant for reinstatement of National Service life insurance, during his lifetime and before becoming totally disabled, must submit a written application signed by him and furnish evidence of health as required in § 8.23 at the time of application satisfactory to the Administrator of Veterans' Affairs and upon such forms as the Administrator shall prescribe or otherwise as he shall require. Applicant's own statement of comparative health may be accepted as proof of insurability for the purpose of reinstatement under § 8.23(a), * * *."

15. "Upon written application by the insured payment of premiums may be waived during the continuous total disability of the insured which continues or has continued for six or more consecutive months, provided such disability commenced * * *(b) while the insurance was in force under premium-paying conditions, * * *."

16. "National Service life insurance on any plan may be reinstated if application and tender of premiums are made:
"(a) On or before July 31, 1948, or within three months after lapse, whichever is later, provided the applicant be in as good health on the date of application and tender of premiums as he was on the due date of the premium in default and furnishes evidence, thereof satisfactory to the Administrator."